Defendant Scott W. Snyder appeals his conviction by the Summit County Common Pleas Court of one count of sexual battery. This court affirms his conviction.
 I
Defendant was indicted during May 1997 on one count of rape, one count of gross sexual imposition, and one count of sexual battery. The charges stemmed from an incident occurring on October 25, 1996, during which defendant was alleged to have entered the bedroom of a University of Akron college student and, while she was sleeping, penetrated her vaginally. Defendant pleaded not guilty to all of the charges. He was ordered to submit to the extraction of blood and saliva for testing by the state.
A week before trial, defendant moved for a hearing "to determine the admissibility of specific instances of the alleged victim's sexual activity, reputation evidence of her sexual activity and opinion evidence of her sexual activity as it relates to the origin of semen." He also moved for a trial continuance or for the exclusion of the state's DNA evidence, arguing that he had not received results of the DNA testing until one week prior to trial, effectively depriving him of an adequate opportunity to review the results. The trial court denied defendant's motions.
After the state dismissed the count of gross sexual imposition, the remaining charges were tried before a jury, which returned verdicts of not guilty of rape but guilty of sexual battery. The trial court sentenced defendant to twelve months in prison. Defendant filed a timely notice of appeal and asserts three assignments of error.
 II
Defendant's first assignment of error is that there was insufficient evidence to convict him of sexual battery and that the jury's verdict was against the manifest weight of the evidence. He specifically maintains that the state failed to prove that he acted with knowledge that the victim was substantially impaired or unaware of the act being committed.
 A
A trial court must enter a judgment of acquittal on any offense charged in an indictment if the evidence is insufficient to sustain a conviction. Crim.R. 29(A). Evidence is insufficient if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could not have found all the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Even though evidence may be legally sufficient to support a conviction, it may nonetheless be against the manifest weight of the evidence. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340.
Defendant was convicted of violating R.C. 2907.03(A)(2)/(3), which provides:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
* * *
 (2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired.
 (3) The offender knows that the other person submits because he or she is unaware that the act is being committed.
A jury can reasonably infer that a victim was substantially impaired and unable to control her conduct for purposes of sexual battery when the evidence shows that the victim was in a state of deep sleep or drunkenness and did not consent to intercourse. State v. Tollivar (July 31, 1997), Cuyahoga App. No. 71349, unreported.
 B
The evidence at trial demonstrated that, at the time of the incident, the victim was living in an apartment with two roommates. The two roommates, Lindsey and Shannon, shared one bedroom while the victim had a separate bedroom. At about 8:00 or 9:00 p.m. on October 24, 1996, the victim and Lindsey met at the home of another friend, where the victim consumed approximately three beers. The group later went out; but the victim did not consume any additional alcohol. The victim and Lindsey returned to their apartment around 2:00 a.m. Shannon, her boyfriend Robby, and two of his friends who had spent the previous night or two sleeping on the living room floor of the apartment were there. About 3:00 a.m., the victim, who was a heavy sleeper, went to sleep alone in her bed. Because Robby intended to stay with Shannon, Lindsey went to sleep on the floor of the victim's bedroom. The bedroom door was closed but not locked.
A short while later, the victim was awakened "[b]ecause someone was having sex" with her. The man was on top of her, and his penis was in her vagina. The victim testified that she "couldn't do anything. It was like a bad dream. I couldn't scream. I couldn't move. I couldn't talk. I couldn't do anything." She did not know who the man was. The man asked her if she wanted him to ejaculate in her. She told him she did not, and he left.
The victim awakened Lindsey and told her repeatedly that someone had "rape[d]" her or had "sex" with her. Lindsey described the victim as "crying and * * * breathing really hard and she seem[ed] scared." Lindsey went out into the living room and saw defendant on the balcony. She asked him why he had come into the bedroom, and he told her "because he felt like it." According to Lindsey, defendant also told her that "he was just talking to [the victim] and they started kissing, and he said, 'And that led to that.' "
The victim then made several phone calls, including one to her parents and one to the police. After meeting with the police, the victim changed from the shorts she had worn to bed into a clean pair and went to the hospital. A doctor performed a pelvic examination, and specimens were taken from her for a rape protocol kit.
A forensic scientist with the Ohio Bureau of Criminal Identification and Investigation testified that she examined the contents of the rape kit, both pairs of the victim's shorts, and a sheet taken by police from the victim's bed. The items tested positive for semen and were forwarded to the Federal Bureau of Investigation ("FBI"). The DNA examiner with the FBI who tested the evidence concluded that defendant could not be excluded as the donor of the DNA identified on the vaginal swab and on cuttings taken from the victim's shorts, nor from the stains taken from her sheet. The examiner stated that defendant's DNA, was "indistinguishable" from the DNA found on the evidence, was extremely rare, and would be found in only one in every 1.6 billion Caucasians. Defendant presented no witnesses in his behalf.
 C
On the basis of the record, there was sufficient evidence from which the jury reasonably could have concluded that defendant engaged in vaginal intercourse with the victim while he knew that she was asleep and was, therefore, either substantially impaired or unaware that defendant was engaging in sexual intercourse with her. Defendant admitted that he had sexual conduct with the victim. Robby was with Shannon when the incident occurred, and there was no evidence that any male, other than defendant, had been in the victim's room at the time of the crime. The DNA evidence alone was sufficient to identify defendant beyond a reasonable doubt as having had sexual intercourse with the victim. See State v. Lane (1995), 108 Ohio App.3d 477,483. As to the victim's testimony that she was unaware of the initial penetration, any doubts as to her credibility or of her version of how penetration took place were, in the first instance, within the province of the jury as the trier of fact. See State v. Shue (1994), 97 Ohio App.3d 459,466. This court is unable to conclude that the jury's assessment was wrong. The fact that the victim awoke after defendant had already penetrated her does not affect the jury's ability to conclude from the evidence that the victim was asleep when the initial penetration was made and that defendant knew that she was asleep and was, therefore, unaware of what he was doing. Defendant's first assignment of error is overruled.
 III
Nearly five months prior to trial, the state moved for an order requiring defendant to submit to the taking of blood and saliva samples. Approximately a month later, the state moved for a trial continuance because its DNA testing would not be concluded by the original trial date. Defendant moved for a continuance or exclusion of the DNA evidence one week before the rescheduled trial date, arguing that he had just received results of the state-ordered testing. The trial court denied defendant's motion and refused to exclude the DNA results.
Defendant's second assignment of error is that the trial court erroneously admitted the state's DNA evidence. He specifically argues: (1) that only the state had access to the victim's rape protocol kit, thereby depriving him of the opportunity to perform independent testing; and (2) that the trial court should have granted his motion for a continuance or excluded the DNA results because the state's late production of the findings resulted in his inability to review and refute the evidence.
DNA evidence may be admissible if it is relevant to a fact at issue in a case. State v. Pierce (1992), 64 Ohio St.3d 490, paragraph one of the syllabus. As with other relevant evidence, DNA evidence must be excluded only if its probative value is outweighed by the danger of unfair prejudice or its likelihood to mislead the jury. See id. at 495-501. In this case, defendant maintained that he and the victim had consensual intercourse. He also suggested through efforts to introduce evidence of the victim's sexual history and her initial confusion as to who had attacked her that, if someone had intercourse with the victim in the manner she described, it was not him. Thus, the identity of the assailant was at issue in this case. As a result, DNA evidence to establish the identity of the assailant was relevant; and the trial court did not abuse its discretion in admitting the evidence.
Defendant had known for months that the state had ordered DNA testing. There is no evidence in the record to suggest that the state wilfully withheld results of the testing. Thus, this is not a situation suggestive of prosecutorial misconduct or of any effort by the state to ambush the defense with known, but withheld, evidence.
As to whether the trial court should have granted a continuance in order for defendant to further study the results of the state-ordered testing, "[t]he grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." State v. Unger (1981), 67 Ohio St.2d 65, syllabus. Among the factors to be considered in determining whether a trial court abused its discretion in denying a continuance are: "the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." State v. Landrum (1990), 53 Ohio St.3d 107,115, certiorari denied (1991), 498 U.S. 1127, 112 L.Ed.2d 1196.
The length of the continuance sought by defendant is not clear from the record. Defendant had sought, and been granted, at least three prior pre-trial continuances. The re-scheduled trial date had been set for three months. Defendant knew for over four months that DNA testing was being conducted by the state. Despite this knowledge, defendant apparently engaged no expert to observe the FBI testing, to dispute the methodology employed by the FBI crime lab, or to review the DNA report upon its completion. There is nothing in the record to suggest that defendant ever requested that he be provided with any specimens from the rape kit, or that he ever notified the trial court that he intended to conduct his own DNA testing. In a letter to the prosecutor two months prior to trial, defendant stated only that he "would like amble [sic] opportunity to review these tests prior to trial."
This is not a situation where a defendant was deprived of the opportunity to investigate newly discovered, and potentially exculpatory, evidence. See State v. Johnson (1986), 24 Ohio St.3d 87,94-95. In this case, defendant was seeking an unspecified period of time in which to "review" the state's DNA results, presumably in an effort to impeach the results. An appellate court may not reverse a trial court's denial of a continuance when the defendant's stated need for more time is to pursue merely speculative evidence and when the defendant has had sufficient time in which to prepare his case. State v.Spirko (1991), 59 Ohio St.3d 1, 17-18. See, also, State v.Mason (1998), 82 Ohio St.3d 144, 155 (denial of defense motion for continuance made eight days before trial not abuse of discretion when state disclosed four hundred eleven pages of investigative reports and witness statements ten days prior to trial and when defense counsel had been appointed eight months prior to trial).
In this case, defendant had ample time to prepare his case and to prepare for potentially damaging DNA results. The trial court did not abuse its discretion in allowing the DNA evidence or in failing to grant the requested continuance. Defendant's second assignment of error is overruled.
 IV
Defendant's third assignment of error is that the trial court erroneously denied his motion to introduce evidence of the victim's prior sexual activity. He specifically argues that he wished to introduce the evidence to show that someone other than he was responsible for the presence of semen in the victim and that, because the state did not test every specimen in the rape kit, he was prevented from developing his "other offender" theory except by evidence of the victim's prior sexual activity. He also argues that evidence relative to the victim's sexual history would have been admissible under the rape shield law if he had been separately tried on the sexual battery charge; but, because he also was prosecuted for rape, the evidence was barred by the rape shield statute and denied him a fair trial
 A
The rape shield statute provides:
 Evidence of specific instances of the victim's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
R.C. 2907.02(D). The statute essentially prohibits the introduction in a rape prosecution of any extrinsic evidence pertaining to the victim's prior sexual activity, unless one of the exceptions, such as evidence that is material to the issue of the origin of semen, applies, and unless the balancing test set forth in the statute applies. The rape shield statute does not apply to prosecutions for sexual battery. State v. Holland
(Oct. 14, 1987), Lorain App. No. 4193, unreported, at 9. The admission in a sexual battery prosection of evidence of the victim's prior sexual activity, however, is allowed only if the trial court, in its sound discretion, finds such evidence to be relevant. Id. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The rules of evidence favor the admission of relevant evidence, except where its prejudicial effect outweighs its probative value. Davis v. Immediate Med. Serv., Inc. (1997),80 Ohio St.3d 10, 16.
 B
In his motion, defendant stated that he wished to admit "specific instances of the alleged victim's sexual activity, reputation evidence of her sexual activity and opinion evidence of her sexual activity as it relates to the origin of semen." At a hearing before trial, defendant made the following proffer:
 [DEFENSE COUNSEL]: The reason I filed that motion is to get in three things essentially.
 Number one, opinion evidence of [the victim's] reputation for sexual activity. That would be from a specific witness as to her opinion [of the victim's] reputation [as] to sexual activity.
 Number two, a general reputation in the community for promiscuity, which will be testified to by a witness.
 And, number three, specific instances of sexual activity.
 The reason I wanted to get those three things in is they go to origin of the semen. Your Honor, you'll hear that on the night of this incident — the morning of this incident, prosecuting witness * * * told several people that it was not my client who had sex with her, that it was another person, Rob[by.] You'll also hear that on at least one instance she was flirting with [Robby] —
* * *
 Number one, that she told another person she had sex with Rob Henry.
* * *
 [PROSECUTOR]: There's a confusion, and she'll admit on direct examination that when she says, "Rob raped me," she did not know at that time — the room was dark — who it was. She initially thought the person that raped her was this Rob[by]. It in fact turned out —
* * *
 [DEFENSE COUNSEL]: Immediately after this incident, I think the evidence will show that she called two people * * * and I believe that the evidence would also show that she was sexually active with both of those two people. I would like to cross-examine her with respect to those two persons and her sexual activity.
The trial court allowed defendant to cross-examine the victim as to her statements regarding Robby, but excluded references to the victim's reputation and instances of sexual activity with others as being violative of the rape shield law.
In this case, admission of evidence of the victim's sexual history and reputation, and evidence that she may have had other sexual partners at unspecified times in her life, does not make it more or less likely that defendant engaged in intercourse with the victim while she was asleep. Moreover, it was established that Robby was with Shannon at the time of the crime and that the victim only initially thought Robby was the perpetrator because both Robby and the perpetrator "talked funny." There was no evidence that either of the two individuals the victim called immediately after the crime had been with the victim or in her apartment at the time of the crime.
As to defendant's argument that failure to sever the charges against him prejudiced him by application of the rape shield law to the battery charge, according to the record defendant never moved to sever the offenses for trial. Accordingly, any error on the part of the trial court in failing to sever the offenses has been waived. See State v. Golden (June 12, 1991), Lorain App. No. 90CA004877, unreported, at 3-4. Even if the error had not been waived, defendant was not prejudiced by being prosecuted for rape and sexual battery in the same trial because the trial court properly denied admission of defendant's proffered evidence and could have done so even in a separate trial for sexual battery.
Defendant's third assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 --------------------- WILLIAM R. BAIRD FOR THE COURT
DICKINSON, J., CARR, J., CONCUR