OPINION
Defendant-appellant Samuel Moreland appeals from the denial of his petition for post-conviction relief, without a hearing. In his petition, Moreland alleged forty separate claims of error. On appeal, he contends that the trial court erred by granting the State's motion for summary judgment regarding the petition, by utilizing the doctrine of res judicata as a bar to some of his claims, by denying his petition on the merits, and by denying an evidentiary hearing. He also contends that the trial court erred in denying him the opportunity to conduct discovery and by issuing insufficient findings of fact and conclusions of law in regard to its denial of the petition. Finally, he contends that Ohio's post-conviction process is not adequate.
We conclude that the trial court did err by failing to conduct an evidentiary hearing on the issue of whether Moreland's trial counsel was constitutionally ineffective for having failed to advise him of one of the fundamental consequences of waiving his right to a jury trial, and that, as a result, his waiver was not knowing and intelligent. However, we find that all other claims raised in the petition were properly rejected. We further find that the trial court did not err by denying Moreland's request for discovery, and that the trial court's findings of fact and conclusions of law were sufficient. We need not address the contention that Ohio's post-conviction relief process is inadequate, because that matter is not ripe for review.
The judgment of the trial court is Reversed, and this cause is Remanded for an evidentiary hearing on the jury waiver issue.
 I
In April, 1986, Moreland was found "guilty of five counts of aggravated murder, three counts of attempted aggravated murder, and guilty of a firearm specification on each of the eight counts." State v. Moreland (Sept. 16, 1988), Montgomery App. No. 9907, unreported. He was sentenced "to death on each of the five murder counts and to three consecutive terms of seven to twenty-five years on the attempted murder counts." Id. On appeal, this court upheld the conviction and sentence[1]. Id.
The Ohio Supreme Court subsequently affirmed the conviction and death sentence. State v. Moreland (1990), 50 Ohio St.3d 58. The United States Supreme Court denied Moreland's petition for a writ of certiorari on October 1, 1990.
On May 30, 1991, Moreland filed a petition for post-conviction relief. The matter was stayed by the trial court pending resolution of Moreland's public records litigation against the City of Dayton. See State ex rel. Moreland v. City of Dayton
(1993), 67 Ohio St.3d 129. The post-conviction relief action was re-activated at the conclusion of the litigation against the City of Dayton. The State filed a motion for summary judgment, which the trial court granted in January, 1998. However, in its decision, the trial court stated that it would permit Moreland to conduct further discovery regarding his claims, and that it would be willing to vacate any portion of its decision affected by the results of the discovery.
Moreland appealed from the denial of his petition for post-conviction relief. We dismissed the appeal for lack of a final appealable order, based upon the trial court's stated intention to review the case after completion of discovery. See,State v. Moreland (May 12, 1998), Montgomery App. No. 17049, unreported. Thereafter, on November 8, 1998, the trial court issued an order wherein it vacated the order permitting additional discovery. Moreland filed this appeal from the denial of his petition, without a hearing.
 II
Moreland's First Assignment of Error states as follows:
 THE TRIAL COURT ERRED IN DENYING APPELLANT ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE NECESSARY TO JUSTIFY HIS OPPOSITION TO SUMMARY DISMISSAL, OR TO DEVELOP AND SUPPORT HIS CLAIMS FOR RELIEF ONCE STATE MISCONDUCT BECOME APPARENT, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
Moreland contends that the trial court erred when it failed to permit him to conduct discovery to support his petition for post-conviction relief. We have previously addressed this exact claim in State v. Chinn (Aug. 21, 1998), Montgomery App. No. 16764, unreported, wherein we declined to permit discovery in accordance with the Ohio Rules of Civil Procedure in post-conviction relief actions. Accordingly, Moreland's First Assignment of Error is overruled on the authority of Chinn, supra,
which we approve and follow.
 III
Moreland's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN ISSUING INSUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARD TO APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.
Moreland contends that the trial court's findings of fact and conclusions of law are insufficient. In support, Moreland claims that the trial court "rarely identified which of the claims [contained in the petition for post-conviction relief] was denied for which reason." He also argues that the trial court failed, when it found a claim barred by the doctrine of res judicata, to identify the portion of the record establishing the bar.
R.C. 2953.21 provides that the trial court must issue findings of fact and conclusions of law when summarily dismissing a petition for post-conviction relief without a hearing. The rationale is that these findings apprise the petitioner of the grounds for the judgment and enable an appellate court to review the decision. State ex rel. Carrion v. Harris (1988), 40 Ohio St.3d 19. Furthermore, when a petition is dismissed on resjudicata grounds, it should specify the portions of the record establishing the bar. State v. Lester (1975), 41 Ohio St.2d 51,55.
In this case, the trial court issued a thirty-two page decision in which it separately addressed each of the forty claims set forth in Moreland's petition. We have reviewed the entire judgment, and note that the trial court made specific findings as to each claim. Moreover, we conclude that when the trial court found a claim barred by res judicata it stated its basis for doing so.
Because we find the findings of fact and conclusions of law were sufficient for us to review the judgment, the Second Assignment of Error is overruled.
 IV
Moreland's Third, Fourth, Fifth and Seventh Assignments of Error are as follows:
 THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S SUMMARY JUDGMENT MOTION.
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MORELAND AN EVIDENTIARY HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS FOR RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 THE TRIAL COURT ERRED IN DENYING THE MERITS OF APPELLANT'S POST-CONVICTION PETITION.
Moreland contends that the trial court erred in granting summary judgment on his claims for relief. He also claims that the trial court erred by failing to conduct an evidentiary hearing on all of his claims. Finally, he argues that the trial court erred in applying the doctrine of res judicata as a basis for denying many of his claims.
"R.C. 2953.21 provides that a person convicted of a crime may petition the court to set aside that conviction on grounds that the defendant's constitutional rights were violated, thereby rendering that conviction void or voidable." State v. McDaniel
(Oct. 24, 1997), Miami App. No. 97-CA-7, unreported. Under the statute, the criminal defendant bears the initial burden of submitting evidentiary documents containing sufficient, operative facts demonstrating substantive grounds for relief. State v.Kapper (1983), 5 Ohio St.3d 36, 38. A hearing is not required absent a showing that substantive grounds for relief exist. Statev. Strutton (1988), 62 Ohio App.3d 248, 251. With this standard in mind, we must examine each of Moreland's forty claims for relief to determine whether the trial court erred in granting summary judgment.
In his first claim for relief, Moreland argued that the trial court should stay any consideration of the petition until his "request for public records and collateral litigation relating to the request is exhausted." This argument is based upon his claim that he was denied access to public records that would support his petition. The trial court denied this claim because Moreland had been given, and had exercised, the opportunity to pursue any public records he deemed necessary to his case. In fact, the Ohio Supreme Court granted his request in regard to some of the requested records. See, State ex rel. Moreland v. City of Dayton,supra.
For his second claim, Moreland claimed that Ohio's death penalty is in violation of international laws and Article VI of the United States Constitution. We find that this claim was capable of being raised on direct appeal, because it did not raise any facts or allegations that were not apparent from the record. Thus, the trial court did not err by rejecting it.
Moreland's third claim argued that, pursuant to the Ohio Jury Instructions, which he presumed the three-judge panel followed, the panel was not permitted to consider sympathy as a factor in its sentencing decision. Therefore, he contended that his right against cruel and unusual punishment was violated. Moreland did not cite any authority to support this proposition. Moreover, this allegation does not raise any matters that could not have been raised upon direct appeal. Therefore, the trial court correctly rejected this claim.
The fourth claim is that Moreland's constitutional rights were violated because defense counsel was not permitted to "open and end closing arguments in the mitigation portion of his trial, even though [he] had the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death." This claim was capable of being raised on direct appeal. This issue has also been previously decided by the Ohio Supreme Court, which has decided the matter adversely to Moreland. See,State v. Jenkins (1984), 15 Ohio St.3d 164, 214-215.
For his fifth and sixth claims, Moreland contended that portions of the record were not included in the record on appeal, and that numerous matters were never recorded or transcribed. Specifically, he contended that the transcript of his arraignment was not included in the record to this court. He also contended that the following were not properly made a part of the record: (1) his waiver of jury trial; (2) discussions between the court and the attorneys concerning time limitations; (3) evidentiary matters; and (4) matters concerning the mitigation phase of trial. Thus, he contends that neither this court, nor the Ohio Supreme Court, were able to fully discharge their duty to review his conviction.
In regard to the issue of the transcript of the arraignment, we note that Moreland concedes that the arraignment was included as part of the record to the Supreme Court. He does not claim any impropriety in the arraignment, nor does he make reference to any prejudice suffered as a result of the failure to include it in the record to this court.
The claim that discussions regarding time limitations, evidentiary matters and matters concerning the mitigation phase of trial were not made a part of the record does not state a claim for relief. First, there is no specification as to what matters were not recorded. Second, there is no statement as to how the failure to record these matters prejudiced his rights. Therefore, we find this claim was properly rejected.
The fact that his waiver of the jury trial was not made a part of the record could have been raised on direct appeal, and thus, was correctly rejected.
The seventh, eighth, ninth, tenth, eleventh and twelfth claims for relief in the petition are premised upon the argument that the conviction is void because the trial court: (1) "failed to conduct an evidentiary hearing into the competency and admissibility of child witness Dayron Talbott's testimony"; (2) violated his right to a fair trial and to due process when it permitted scientific testimony about the results of an atomic absorption test, electrophoresis and statistical blood groupings; (3) refused to allow Moreland's expert to testify that the child witness, Dayron Talbott, was susceptible to influence; and (4) permitted gruesome, inflammatory and cumulative photographs to be admitted into evidence. We conclude that these matters were capable of being raised, and in fact were addressed by the Supreme Court, on direct appeal. Therefore, the trial court correctly rejected these claims as barred by the doctrine of res judicata.
In the thirteenth claim for relief, Moreland argued that his conviction was void because of prosecutorial misconduct. From our review of the record, we find that seven of the eight instances of misconduct cited by Moreland are apparent from the record, and thus, were capable of being raised on direct appeal. We also note that the Ohio Supreme Court dealt with all seven of these matters on direct appeal.
The only instance of claimed prosecutorial misconduct that is not apparent from the record, and which does not appear to have been dealt with on direct appeal, is the allegation that the prosecutor placed 8" x 10" color photographs of the victims on the courtroom bannister as he made his closing argument. Moreland contends that this deprived him of a fair trial.
"The conduct of a prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." State v. Lane (1995), 108 Ohio App.3d 477,483, citations omitted. "For reversal, the misconduct must prejudicially affect the substantial rights of the accused." Id.
"* * * [I]n a bench trial, the trial court is presumed to rely only on relevant, material and competent evidence in arriving at its judgment." State v. Lane, supra, at 484, citing State v. Richey
(1992), 64 Ohio St.3d 353, 357-358.
The Ohio Supreme Court has stated that the prosecutor, at the penalty phase, may introduce any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing. State v. DePew (1988), 38 Ohio St.3d 275,282. Further, the Supreme Court has held that mere enlargements of photographs, without more, does not result in an automatic reversal. Id. If there is any appropriate reason demonstrated for the use or need of enlargements, and if there is no indication that the enlargements were intended solely to inflame the panel's passions, then reversal is not indicated. Id.
We note that there is no claim that these particular photographs had not been properly introduced into evidence or that they were unduly prejudicial or gruesome. Furthermore, there is no claim that the enlargements were made solely for the purpose of use during closing arguments. In other words, there is no claim that they did not relate to the nature of the aggravating circumstances or that they did not have some appropriate use during trial. It is clear from the sentencing opinion that the court did refer to some of the photographs in making its decision to impose the sentence; however, the references made were relevant to the nature of the aggravating circumstances.
We find no evidence, nor has Moreland cited any, that the use of these photographs during closing arguments of the penalty phase denied him of a fair trial. Therefore, upon review, we find that this claim was also correctly rejected.
The fourteenth and fifteenth claims for relief were premised upon insufficiency of the evidence and manifest weight claims. Again, we note that the Supreme Court disposed of both of these claims on direct appeal; thus, they are properly barred by resjudicata.
In his sixteenth claim, Moreland contended that the panel did not consider relevant mitigating factors and that it did consider non-statutory aggravating factors.
Again, our review of the record reveals that this issue was addressed on direct appeal, both by this court and by the Ohio Supreme Court. Thus, these claims were appropriately rejected.
The seventeenth claim is one for ineffective assistance of counsel. Specifically, Moreland cites the following omissions as grounds for this claim — trial counsel failed to (1) obtain a firearms expert and a "blood expert" to contest the State's witnesses; (2) submit evidence in support of the motion for change of venue; (3) file a motion to suppress admissions made by, and items taken from, Moreland after his arrest; (4) file a motion challenging the improper denial of bond; (5) file a motion challenging "the improper grand jury procedure"; (6) make certain that Moreland was aware of all the consequences of waiving a jury trial; (7) ensure that a complete record of all proceedings was maintained; (8) object to more than five of the photographs admitted at trial; (9) object to the testimony of the State's expert regarding electrophoresis; (10) object to repeated attempts to use Moreland's reliance on his Miranda rights as evidence of his guilt.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court set the standard for determining whether a defendant has been provided with ineffective assistance of counsel. This standard, subsequently followed in State v. Bradley
(1989), 42 Ohio St.3d 136, requires that a defendant satisfy a two-part test. First, the defendant must demonstrate that his counsel's representation was deficient by showing that counsel's performance fell below an objective standard of reasonable representation. Id., at 142. Second, the defendant must prove that his trial counsel's deficient representation resulted in prejudice to the defendant. Id. To prove prejudice, the defendant must show "a reasonable probability that, were it not for counsel's unprofessional errors, the result of the trial would have been different." Id.
The United States Supreme Court has stated that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance* * *."Strickland, supra, at 689. This Court has stated that under Ohio law, a properly licensed attorney is presumed competent. State v.Estes, (May 31, 1996) Montgomery County App. No. 15419, following, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of Strickland and Bradley. Estes, at 3.
The argument that trial counsel was ineffective for failing to file a motion to suppress, failing to file a motion regarding bond, failing to object to photographs, failing to object to testimony regarding electrophoresis and Moreland's reliance on hisMiranda rights are all apparent from the record. Since these claims do not depend upon evidence dehors the record, they were capable of being raised on direct appeal, and thus were properly rejected.
We next turn to the issue of the failure to present experts. This court has previously held that a claim of ineffective assistance of counsel based upon the failure to present expert testimony is a matter "which must be determined dehors the record." State v. McDaniel (Oct. 24, 1997), Miami App. No. 97-CA-7, unreported. When "a post-conviction relief petitioner alleges ineffective assistance of counsel through affidavits naming uncalled witnesses whose testimony may have demonstrated evidence significant to the defendant, an evidentiary hearing should be held." State v. Aeh (Dec. 11, 1997), Franklin No. 97APA05-601, unreported. We have reversed a summary judgment in a post-conviction relief action when the petitioner presented affidavits of experts who provided averments that, if provided at trial, may have had a bearing on the outcome of the trial. See,State v. Chinn (Aug. 21, 1998), Montgomery App. No. 16764, unreported.
In this case, Moreland has failed to present affidavits indicating that defense counsel could have found experts or that they would have contradicted, or even cast doubt upon, the testimony of the State's experts. Without more, we cannot say that Moreland's assertions demonstrate ineffective assistance of counsel in regard to the lack of expert witnesses. This claim was correctly rejected.
We next address the claim that counsel was ineffective for failing to object to the improper grand jury procedure. Moreland contends that the grand jury was improperly constituted and that his indictment was based upon inadequately presented evidence. However, Moreland failed to submit any evidence indicating that this claim has merit. Therefore, this claim was properly rejected.
The next issue is that trial counsel failed to warn Moreland of the consequences of a jury trial waiver.[2] According to Moreland's affidavit, he would not have agreed to waive a jury had he known all of the consequences. The affidavits of trial counsel indicate that they advised Moreland to waive a jury because the verdict of a three-judge panel would be less emotional than that of a jury, given the publicity associated with his case. The affidavit does not speak to whether Moreland was advised of his rights.
Even if trial counsel failed to inform Moreland of all the consequences of his waiver, we do not find that this rises to the level of ineffective assistance of counsel. Trial counsel had a legitimate basis for advising Moreland to waive a jury. We find that the advice given falls within the wide range of professional assistance. Furthermore, given the record before us, we cannot say that there is a reasonable probability that the outcome of the trial would have been different had Moreland not waived a jury trial. Therefore, this claim was properly denied.
Moreland's claim also involves his argument that the trial court failed to present evidence in support of his motion for change of venue. Moreland fails to specify what evidence was omitted. However, it is clear that trial counsel filed a motion for change of venue and supported it with evidence of publicity. Although in their affidavits trial counsel admit that they did not include all of the publicity associated with the case, it is clear that the court was made aware of the intense publicity surrounding the case. In fact, it is apparent that Judge Kessler had actually seen one of the articles concerning the case, and was aware of the nature of the publicity. We conclude that counsel's failure to include every piece of publicity surrounding the case, given that the trial court was aware of the level of publicity, did not amount to ineffective assistance of counsel. Thus, this claim was properly rejected.
The final issue raised in claim number seventeen is that counsel failed to ensure that a complete record of proceedings was maintained. This claim does not specify what was omitted from the record. Also, other than broad, conclusory allegations of prejudice, Moreland fails to specify how he was prejudiced by any such omission. This claim was also correctly rejected.
For his eighteenth claim, Moreland contends that he was denied effective assistance of counsel on his direct appeal before the court of appeals. This issue was properly denied because "[c]laims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C.2953.21." State v. Murnahan (1992), 63 Ohio St.3d 60, paragraph one of the syllabus.
The nineteenth claim alleged that the "Ohio death penalty scheme is unconstitutional on its face in violation of the United States Constitution and the Ohio Constitution." All of the issues raised in this claim could have been raised on direct appeal. Moreover, all of the issues raised have been rejected by the Ohio Supreme Court. See, State v. Buell (1986), 22 Ohio St.3d 124;State v. Jenkins (1984), 15 Ohio St.3d 164; State v. Mack (1995),73 Ohio St.3d 502. Therefore, the trial court did not err in rejecting this claim.
In his twentieth claim, Moreland contended that his conviction is void because he was denied a fair and impartial review of his death sentence. Specifically, he argued that appellate courts in Ohio are required to conduct proportionality reviews of any death sentence reviewed, but that they are thwarted in that regard by the failure of the Ohio trial courts to comply with R.C. 2929.03(G). He further contends that trial courts repeatedly refuse to file sentencing opinions in cases in which the jury has "returned a life sentence in a capital case." Therefore, he argues that the only cases considered by appellate courts are cases in which a death sentence is imposed, thus "creating a proportionality system tilted towards death."
R.C. 2929.03(G) merely requires that the record in cases in which the death sentence is imposed be delivered to the appropriate appellate court for review. Furthermore, Moreland has submitted no evidence to indicate that these cases have not been properly transmitted or that trial courts have refused to file sentencing opinions in cases in which a life sentence, rather than a death sentence, is imposed. Therefore, we find that this claim, which is based on unsupported and conclusory allegations, was properly rejected.
The twenty-first and twenty-second claims argued that the conviction is void because "the three judge panel overruled Moreland's motion to appoint a special hearing judge," and because the panel failed to set forth adequate factual and legal reasons for imposing the death penalty. Both of these matters are apparent from the record, and thus, should have been raised on direct appeal. These claims were correctly rejected.
Moreland's twenty-third claim is premised upon his contention that it was error to impose the death sentence when he proved, and the panel found, that he had a mental disease or defect that caused him to lack the substantial capacity to conform his conduct to the requirements of the law. This court specifically overruled this claim on direct appeal, and therefore, the trial court's finding that it is barred by res judicata was correct.
For his twenty-fourth claim for relief, Moreland argued that he was denied meaningful appellate review because the Ohio Supreme Court found that, although the prosecutor improperly used evidence of his "post-Miranda silence" as evidence of his guilt, it presumed that the panel did not consider this evidence. The Supreme Court reviewed this issue and found that the error was "harmless beyond a reasonable doubt". No evidence dehors the record was submitted in support of this claim, therefore, it is not an appropriate claim for post-conviction relief. Furthermore, this claim is not cognizable in a post-conviction relief action because the trial court has no jurisdictional basis on which it can review the propriety of actions or decisions of superior courts. State v. Powell (1993), 90 Ohio App.3d 260, 267.
In the twenty-fifth cause of action, Moreland claimed that Judge Kessler should have recused himself from the panel because he had read an article regarding the case prior to trial. This matter is clearly evidenced in the record, and thus, should have been raised on direct appeal.
The twenty-sixth cause of action argued that the conviction is void because the evidence showed that it "would have been impossible for him to have committed this crime given the time fame [sic] involved." This issue involves the question of whether the conviction is against the manifest weight of the evidence, a matter that should have been raised on direct appeal. Therefore, this claim is barred.
In the twenty-seventh claim, Moreland again argued that he was entitled to have an expert appointed for the purpose of explaining his cultural background and the effect that it had on his development. This claim is also raised as an ineffective assistance of counsel argument in the thirty-eighth claim. Moreland presented an affidavit of a social service worker who opined that Moreland's development in an "inner city culture" needed to be presented to the panel and that the failure to do so affected his trial.
Our review of the social worker's affidavit indicates that he would have testified that Moreland's upbringing in an inner city environment helped to shape his development and that Moreland was "locked into the culture totally." The affidavit also indicates that Moreland's background made him into a "maximum underachiever" who maintained his own level of integrity and ethics. Moreland claims that this information would have helped him in the guilt/innocence phase of trial by "explaining his complex relationship to the [victims]." Moreland also contends the evidence would have been of help in the mitigation phase by providing him with evidence of the R.C. 2929.04(B)(2) ["strong provocation"] and (B)(7) [catchall] mitigating factors.
We cannot conclude from this affidavit that the failure to procure such testimony at the guilt/innocence phase of trial fell below a reasonable standard or that it would have changed the outcome of the trial.
Furthermore, it is clear from the record that trial counsel's strategy during the mitigation phase was to emphasize that Moreland's chronic alcoholism caused him to lack the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law [R.C.2929.04(B)(3)]. In their affidavit, trial counsel specifically averred that they believed this to be the strongest mitigating factor, and that they emphasized it. However, they also stated that they did raise the (B)(2) and (B)(7) factors, but did not emphasize them because they believed them to be weaker arguments. We cannot say that the emphasis of one trial strategy over another rises to the level of ineffective assistance of counsel. Therefore, this claim was properly rejected.
The twenty-eighth claim argued that Moreland's conviction is void because a social worker was not appointed to assist trial counsel as a "mitigation specialist." This was also raised in the thirty-eighth claim as an ineffective assistance of counsel issue. Moreland presented the affidavit of a social worker who averred that she would have been able to assist in the preparation of mitigation evidence. She also averred that she had "training and experience in identifying environmental and biological factors that affect the development of individuals."
Our review of the affidavit reveals that the social worker did not identify any discovery or evidentiary issue that she would be more capable of researching than would a certified death penalty attorney. Furthermore, the affidavit merely indicates that the social worker would have assisted counsel in preparing for trial; something that counsel is presumed capable of doing on their own. Therefore, we find this claim properly rejected.
In the twenty-ninth claim, Moreland argued that the conviction is void because the trial court failed to grant his motion for a change of venue. The motion and denial are both part of the record. This matter should, and could, have been raised on direct appeal, and was therefore properly rejected.
The thirtieth claim for relief involved the argument that Moreland's waiver of a jury trial was not knowingly, voluntarily or intelligently made. In support, he argued that although the written waiver is part of the record, there is no transcript indicating that the waiver was executed in open court. He also presented his affidavit in which he claimed that he was not apprised of the following: (1) that only three people, rather than twelve, could convict him and sentence him to death; (2) that he would "be giving up his right to a two-stage process" in that the jury would not make a recommendation of death that would have to be reviewed by the trial judge, who would make an independent determination; (3) that the opportunity for reversal of a conviction and death sentence is greatly reduced whenever a jury is waived; and (4) that the jury waiver could have been withdrawn at any time prior to the commencement of trial.
Moreland claimed that had he been made aware of these factors, he would not have waived his right to a jury trial.
According to the affidavit of trial counsel attached to the State's response to the petition for relief and its motion for summary judgment, they advised Moreland that if he chose to have a jury trial, the State would have to prove his guilt beyond a reasonable doubt to twelve people. The affidavit also indicates that while counsel advised Moreland to waive a jury, they left the ultimate decision to him.
"A waiver is the intentional relinquishment of a known right or privilege." State v. Bays (1999), 87 Ohio St.3d 15, 19. "[A] defendant must have some knowledge of the nature of the jury trial right to make a valid waiver." Id. Such a waiver must be knowingly, intelligently and voluntarily made. Crim.R. 23(A).
Death penalty cases are unique in that they allow the jury to enter into the penalty phase. If the jury recommends death, the trial court must independently review the evidence and determine whether a sentence of death is justified. However, if the jury recommends that the defendant not receive the death penalty, the trial court cannot overrule that decision. Thus, as Moreland contends, waiver of a jury is a waiver of a two-step process in which a defendant has two bites at the apple.
We conclude that this claim survives the State's motion for summary judgment. The right to have a jury determine the penalty is a fundamental right. Absent an explanation of the fact that the defendant would give up the right to have a jury determine his fate, any waiver cannot be knowing, intelligent or voluntary.
While there is a written waiver in the record, there is no indication that it was made in open court. Moreover, the waiver merely states that Moreland was aware that he had a right to a trial by jury. There is nothing in the record to indicate that Moreland was advised of any of the consequences of waiving his right to a jury trial. We find it unlikely that seasoned death-penalty certified attorneys would fail to advise a defendant of this important consequence of a jury waiver; however, we simply cannot ascertain from the record whether they did in fact do so. Therefore, this claim must be remanded to the trial court for a hearing. At that hearing, it must be determined whether Moreland was aware that by waiving a jury he would lose the benefit of a two-tiered sentencing process, and, if not, whether, as he claims, he would not have waived a jury if he had understood this aspect of the waiver. On both of these issues, Moreland has the burden of proof.
The thirty-first claim for relief argued that the conviction was void because the trial court failed to maintain a complete record of all proceedings. Again, Moreland failed to provide specifics as to what documents are not in the record, and as to how he was prejudiced by any omission. We find this claim was properly rejected.
In the thirty-second and thirty-third claims for relief, Moreland argued that trial counsel was ineffective for failing to request a firearms expert and an expert on blood. We find that these claims were correctly rejected for the reasons set forth in our discussion of the seventeenth claim for relief.
The thirty-fourth claim for relief was premised upon the contention that the conviction and sentence was void because Moreland's "indictment was returned by an improperly constituted grand jury and upon inadequately presented evidence." As discussed in the seventeenth claim for relief, Moreland failed to present any evidence to this claim. Therefore, the trial court did not err by rejecting this claim.
The thirty-fifth claim set forth the contention that the conviction was void because Moreland was denied bond prior to trial. He argued that had bail been set, he "may well have been able to make bail and assist his counsel in preparation of the case." As the trial court noted, this matter was capable of being raised on direct appeal. Moreland does not raise any evidencedehors the record in support of this claim. Moreover, he did not claim that he was denied the opportunity to assist counsel in preparing his case for trial. Therefore, we find the trial court acted properly in rejecting this claim.
In the thirty-sixth and thirty-seventh requests for relief, Moreland contended that his conviction is void because he was denied the right of allocution prior to sentencing and because the "mandatory nature of Ohio's capital statute" is unconstitutional. We have reviewed these claims and find that they were capable of being raised on direct appeal. Therefore, they were properly rejected by the trial court.
The thirty-eighth request for relief argued that the conviction was void because Moreland was denied the effective assistance of counsel at the mitigation phase of trial. Specifically, he claimed that counsel failed to do the following: (1) interview all family members, friends and significant people in Moreland's life; (2) develop Moreland's "psychosocial background"; (3) object to photographs; (4) object to the prosecutor's use of references to matters not in evidence, use of non-statutory aggravating circumstances, use of Moreland's reliance on his Miranda rights, use of victim impact matters and the effect of the case on the coroner, and the prosecutor's personal statement that Moreland should die; and (5) object to the panel's failure to grant the right of allocution. We find that all of these claims, except the failure to interview potential witnesses, were apparent from the record and could have been raised on direct appeal, and are therefore barred.
In reviewing the claim that counsel failed to interview family members, friends, and significant other persons, we note that the only two people who presented affidavits in which they claimed they were not interviewed were Moreland's father and his maternal aunt.[3] Moreland's father's affidavit basically recited facts regarding the history that Moreland's mother was a violent alcoholic, while the aunt's also stated that the mother was an alcoholic. Moreland's father testified during the mitigation phase of trial. His testimony, while not as detailed as his affidavit, essentially established the fact of the mother's violence and alcoholism. While the aunt did not testify, the averments contained in her affidavit were covered by the father's testimony. Therefore, we conclude that the failure to interview the aunt did not prejudice Moreland. Furthermore, even if counsel failed to interview Moreland's father, his testimony at trial established the salient facts contained in his affidavit. Therefore, we find that this claim was properly denied.
In the thirty-ninth claim for relief, Moreland argued that he was denied effective assistance of counsel on his direct appeals. Again, this claim was properly rejected based upon the reasons discussed in regard to Moreland's eighteenth claim for relief.
The fortieth, and final, claim for relief argued that the"cumulative effects of the errors and omissions presented in the petition resulted in prejudice rendering the conviction and sentence void.
The Ohio Supreme Court recognized the doctrine of cumulative error in State v. DeMarco (1987), 31 Ohio St.3d 191. "Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995), 74 Ohio St.3d 49.
Moreland did not raise this issue in any of the prior direct appeals. Therefore, we need not consider the doctrine in relation to any errors previously raised. As for the appeal presently before us, we conclude that the doctrine is not applicable. During the course of our review, we noted only one error, regarding Moreland's jury waiver, that is being remanded for hearing. Without benefit of a hearing, we cannot determine whether Moreland was prejudiced. Accordingly, this claim was properly denied.
The Third, Fourth and Fifth Assignments of Error are sustained in regard to the issue of the jury waiver. The remaining issues in those Assignments of Error, as well as the Seventh Assignment of Error, are overruled.
 V
Moreland's Sixth Assignment of Error states as follows:
 OHIO'S POST-CONVICTION PROCESS IS NOT AN ADEQUATE AND CORRECTIVE PROCESS.
Moreland contends that Ohio's post-conviction procedures fail to afford a petitioner with an adequate and corrective process because it does not provide for discovery and it permits the use of the doctrine of res judicata.
We must overrule this assignment of error because the case is being remanded for an evidentiary hearing. Until this hearing is held, we cannot determine whether Moreland will receive the relief requested. If he does, then his claim will be rendered moot. Therefore, this issue is not ripe for review.
 VI
Moreland's Third, Fourth and Fifth Assignments of Error having been partially sustained, the judgment of the trial court is Reversed, and this cause is Remanded for the purpose of conducting an evidentiary hearing on the issue of whether Moreland was aware of the consequence, as specifically raised in his petition for relief, of waiving his right to a jury trial,[4]
and, if not, whether Moreland would have waived a jury had he been aware of that consequence.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Carley J. Ingram.
David H. Bodiker.
William S. Lazarow.
Tracey Leonard.
Hon. Patrick Foley.
[1] On appeal, Moreland was represented by new counsel.
[2] This issue is later raised in claim number thirty in regard to whether the waiver was knowingly, voluntarily and intelligently executed.
[3] Trial counsel's affidavit specifically states that Moreland's father was interviewed.
[4] On remand, the question of whether Moreland was aware of the consequence of his waiver is limited to the specific issue of whether he was aware that he would forego the opportunity, present in a jury trial, to require two independent fact finders to determine that the death penalty is warranted before that penalty could be imposed and whether he would have waived the right had he been so informed.