**The STATE of Ohio, Appellee,**

v.

**LANE, Appellant.** ■

[Cite as *State v. Lane* (1995), 108 Ohio App.3d 477.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940617.

Decided Dec. 13, 1995.

480

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Becker, Reed, Tilton & Hastings* and *Robert R. Hastings, Jr.,* for appellant.

PAINTER, Judge.

## I.  Facts

In late June 1991, Nathalie Sargent fell asleep watching TV in her apartment. Suddenly, she was awakened by a man on top of her, who forced her to engage in

various types of sexual conduct with him and ordered her to give him money from her purse. The man spoke to her throughout her ordeal, but she was never able to see his face. She described her assailant as a white male with brown hair, wearing jeans, white sneakers, a brown leather belt and a blue T-shirt. Sargent was unable to identify the defendant-appellant, Jeffery Lane, at a police lineup.

Joan Dawson, a criminalist at the coroner's lab, found semen present in samples taken of vaginal swabs, panties, and a bedsheet, and concluded that Sargent had Type B blood consistent with the secretions found in the vaginal swabs.

Known samples of Lane's blood and saliva were taken pursuant to a valid consent form. The results were shipped to Cellmark Laboratories ("Cellmark") for a DNA analysis. The first set of DNA tests proved inconclusive. However, after a second set of tests, Cellmark determined that the DNA from Sargent's bedsheets matched the DNA from Lane's blood.

Leroy Davis, an inmate at the Hamilton County Justice Center with Lane, testified that Lane confessed to raping Sargent. Davis had struck a bargain in which the prosecutor would recommend less jail time for Davis in return for his testimony against Lane.

In a bench trial, the judge convicted Lane of rape, aggravated burglary, and aggravated robbery, finding that "the DNA testing of Cellmark establishe[d] the guilt of the defendant [Lane] beyond a reasonable doubt."

## II. Assignments of Error

In his appeal, Lane asserts six assignments of error. Lane argues that (1) the trial court abused its discretion by allowing Lisa Forman, Ph.D., to give expert testimony regarding the DNA match when Forman was not a molecular biologist; (2) the verdict is against the manifest weight of the evidence: (3) prosecutorial misconduct denied him a fair trial; (4) the trial court erred by admitting DNA evidence without standards for DNA testing established by the Ohio Director of Health; (5) the trial court erred by admitting DNA evidence that was obtained using Lane's blood samples beyond the scope of his express consent; and (6) Lane's counsel provided ineffective assistance at trial. We shall address each assignment separately.

## III. Expert Testimony

Lane makes three arguments to exclude the testimony of the state's expert, Lisa Forman, Ph.D.: (1) Forman was not qualified to testify as an expert in molecular biology, and therefore, she was not competent to give an expert opinion on a DNA match; (2) Forman did not participate or observe any of the laboratory procedures and, therefore, she was not qualified to give an opinion

whether the procedures used were valid; and (3) the trial court abused its discretion by permitting an unqualified expert to give an opinion on a DNA match.

■ The state qualified Forman as an expert in population genetics, but not molecular biology. In DNA fingerprinting, a molecular biologist prepares the samples and conducts the tests necessary to determine whether a forensic match can be identified. If a match exists, a population geneticist calculates the probability that the match might have arisen by chance in the population. Therefore, Forman was competent to testify to how the probability was calculated, but not to how the lab arrived at a match. With regard to the Cellmark casefile, Forman testified to testing procedures and protocol, and stated that Julie Cooper, the molecular biologist on the case, found a match between the DNA in Lane's blood and in the semen taken from the floral-patterned sheet, but not from the panties or the vaginal swab.

■ Lane not only failed to object to the admission of either the Cellmark casefile or the x-ray films, but also failed to object to most of Forman's interpretation of these exhibits, aside from an initial request to question Forman on voir dire concerning her qualifications to prevent the state from having her testify as a molecular biologist. However, because the state never qualified Forman as a molecular biologist, Lane could have successfully objected each time that Forman gave an opinion requiring expertise in the area of molecular biology. Lane's failure to object waives his right to appeal the issue. Therefore, we may not reverse absent plain error. Crim.R. 52(B); *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. We can find plain error only in rare circumstances where the outcome of the trial would clearly have been otherwise without the error. *Id.*

Even if Lane had successfully objected to Forman's testimony regarding how these specific tests were conducted and how the conclusions were drawn, then Forman would still have been able to testify as to the lab protocol for conducting the tests generally, because she was clearly well versed in that regard. Cooper documented her conclusions finding a match between the DNA in Lane's blood and the sheet taken from the crime scene. *in the Cellmark casefile.* With Cooper's report in the Cellmark casefile establishing the DNA match between Lane and the sheet, we cannot say that the DNA evidence was tainted altogether, but only Forman's comments that require expertise in molecular biology.

Therefore, we cannot say that the outcome of the trial would clearly have been otherwise without the portions of Forman's testimony that require expertise in molecular biology. While we find it puzzling that the state failed to have the molecular biologist testify, and even more puzzling that Lane did not object to the

entry of the Cellmark casefile into evidence, in this instance we do not find plain error, and accordingly overrule the first assignment of error.

## IV. Manifest Weight of the Evidence

In his second assignment of error, Lane argues that the trial court lost its way and created a manifest miscarriage of justice. Lane argues that the evidence is insufficient to establish the issue of identity beyond a reasonable doubt. We disagree.

We cannot reverse a conviction by a trial court where there is substantial evidence upon which the trial court could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. We cannot reverse a conviction by a trial court unless the court lost its way and created a miscarriage of justice. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. We must leave the task of weighing the evidence to the trier of facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

With these standards in mind, we have sifted the record to determine whether competent, credible evidence established Lane's identity as the perpetrator beyond a reasonable doubt. We have already stated that the trial court properly admitted the DNA evidence and hold that the DNA evidence was sufficient to identify Lane as the perpetrator of this rape beyond a reasonable doubt. Davis's testimony that Lane admitted to raping Sargent served to further establish Lane's identity as the rapist.

Accordingly, we hold that the judgment of the trial court was not against the manifest weight of the evidence, and we overrule the second assignment of error.

## V. Prosecutorial Misconduct

In his third assignment of error, Lane asserts that the prosecutor introduced inflammatory, prejudicial evidence of other acts, commented on his silence while he was in custody, and withheld evidence favorable to him. Lane claims that these actions rise to the level of prosecutorial misconduct. We are persuaded that the prosecutor's actions were egregious, but we cannot agree that these actions rise to the level of reversible misconduct.

The conduct of a prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394. See, also, *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. For reversal, the misconduct must prejudicially affect the substantial rights of the accused. *State*

*v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. In evaluating a claim of prosecutorial misconduct, the Ohio Supreme Court commented that "improper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, 207, citing *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. However, in a bench trial, the trial court is presumed to rely only on relevant, material and competent evidence in arriving at its judgment. *State v. Richey* (1992), 64 Ohio St.3d 353, 595 N.E.2d 915.

After reviewing the entire record and conducting a due process analysis, we believe that Lane received a fair trial, even in the presence of any inadmissible evidence presented to the court. The prosecutor introduced evidence of a gross sexual imposition charge that was never prosecuted, and a Virginia Beach sex charge for which there was no arrest. The prosecutor then elicited testimony from Lane's cellmate, Leroy Davis, that Lane stated that he would kill his parole officer, that his modus operandi was to search for houses with single women in them, that he made derogatory comments about women in general, and that he had stated that he could not "get off" by consensual sex. Lane either failed to object to this evidence, or had objections sustained, with the one exception in which the court overruled an objection to the comment that Lane stated that he could not "get off" by consensual sex because it was a "statement against interest." The record indicates that the trial judge was well aware that these attempts to introduce such evidence were impermissible.

Later, Lane alleged that the prosecutor failed to disclose that the fingerprints taken from the crime scene had not been matched to Lane's fingerprints. In fact, the fingerprints taken from the crime scene had not even been tested. The prosecutor had the duty to disclose all known evidence that was clearly exculpatory and material. See Crim.R. 16(B)(1)(f); *State v. Johnston* (1988), 39 Ohio St.3d 48, 61, 529 N.E.2d 898, 911–912. In *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494, the United States Supreme Court held that in determining whether the prosecutor improperly withheld evidence favorable to the defendant, a court shall find the evidence material only in instances when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding probably would have been different." Here, the failure of the prosecution to disclose that fingerprints taken from the crime scene were not tested clearly falls short of the *Bagley* standard.

As the coup de grace, the prosecutor introduced Lane's silence during his mother's statement to an officer that Lane had prior sexual problems. The trial court erroneously admitted this evidence over objection. Then, in her closing

argument, the prosecutor argued that Lane adopted his mother's comment due to his failure to disclaim it. The Ohio Supreme Court has clearly stated that the trier of fact may not consider invocation of the privilege against self-incrimination for any purpose. *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 550 N.E.2d 937.

In ruling on the prosecutor's misconduct, we must be mindful of the United States Supreme Court decision that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 210, 102 S.Ct. 940, 942, 71 L.Ed.2d 78, 82. Under the above standards, we find this a close question. Mindful of the clear error in admitting evidence of Lane's silence, we do not consider the error, or the other attempts to improperly introduce inflammatory evidence, to be sufficiently egregious to result in an unfair trial. A review of the trial court's findings, and the evidence recited in support, leads us to conclude that the trial court relied only upon relevant, material and competent evidence in reaching its decision.

Therefore, we overrule Lane's third assignment of error, but we suggest that the prosecutor review the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as DR 7–106(B)(1) and (2), and govern future conduct accordingly.

## VI. Director of Health Standards for DNA Analysis

In his fourth assignment of error, Lane argues that DNA results are inadmissible until the Ohio Director of Health promulgates some regulations regarding the methods and standards necessary to establish the validity of DNA analysis. This argument was not raised below; therefore, we may not reverse absent plain error. Crim.R. 52(B); *Long, supra*, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. As we have already noted, we can find plain error only in rare circumstances where the outcome of the trial would clearly have been otherwise without the error. We hold that admitting DNA evidence without Director of Health standards is not plain error, because, *inter alia*, it is not error at all.

Lane relies on *State v. Ripple* (1994), 70 Ohio St.3d 86, 637 N.E.2d 304. Lane's reliance is not only misplaced, but phantasmal. In *Ripple*, the Supreme Court of Ohio held that R.C. 4511.19(D) mandates that drug or alcohol testing conducted for the purposes of establishing intoxication in driving-under-the-influence charges must be in accordance with methods approved by the Director of Health and must be conducted by an individual possessing a valid permit, pursuant to R.C. 3701.143. The reason for that holding is that the Revised Code requires the promulgation of standards by the Director of Health, and makes compliance with those standards a condition precedent for the admission into evidence of drug or alcohol testing. *Ripple, supra*; R.C. 4511.19(D).

There is no corresponding rule for DNA testing in the Revised Code. The Ohio Supreme Court has held that DNA evidence is admissible when relevant. *State v. Pierce* (1992), 64 Ohio St.3d 490, 597 N.E.2d 107. Questions of reliability go to the weight of the evidence, rather than its admissibility. *Id.* at paragraph two of the syllabus.

Because Lane cannot demonstrate more than a weak policy argument that the Director of Health should, perhaps, promulgate standards, we hold that the trial court did not commit error and overrule the fourth assignment of error.

### VII.  Scope of Consent for Blood Use

In his fifth assignment of error, Lane argues that his consent to draw blood was restricted to the release of results to the Cincinnati Police Department. Therefore, it was beyond the scope of the consent to release blood samples to Cellmark for DNA testing, and the DNA results should not have been admitted at trial. We disagree.

Lane failed to object to the submission of the blood samples for DNA testing. The standard for reversal is plain error. *Long, supra,* 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. The consent permitted the coroner's lab to take hair, blood and saliva samples for tests. The consent permitted the lab to release all results to the Cincinnati Police Department. We find no evidence in the record to hold that Cellmark's DNA tests were not contemplated by Lane's consent. Therefore, we hold that the trial court did not commit plain error by admitting the DNA evidence obtained using blood samples pursuant to Lane's written consent and overrule Lane's fifth assignment of error.

### VIII.  Ineffective Assistance of Counsel

In his final assignment of error, Lane argues that his defense counsel's representation fell below the objective standard of "reasonable representation" and entitles Lane to a new trial. Rarely do we find a record in which counsel for either side has made no mistakes. It is much easier to sit back as an "armchair quarterback" and pick apart counsel's trial strategy after a defeat than to formulate and execute such strategy in the face of all of the factors that enter into a trial.

For this reason, trial counsel is strongly presumed to have rendered adequate assistance under Ohio law. Trial counsel's performance will not be deemed ineffective unless and until that performance is proved to have fallen below an objective standard of a reasonable relationship to a trial strategy, and prejudice arises from that lack of performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. In order to find ineffective assistance of counsel, we must find first that the trial counsel violated an "essential duty" as counsel.

*State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831, 837. Then, we must find that the lack of a relationship to a trial strategy caused material prejudice. *State v. Lawson* (1992), 64 Ohio St.3d 336, 595 N.E.2d 902. Therefore, we must determine from the totality of the circumstances whether Lane has met his burden to show that trial counsel's actions bore no reasonable relationship to a trial strategy, and that the decision reached by the trial court would likely have been different absent the errors made by trial counsel. *State v. McNair* (Sept. 22, 1994), Cuyahoga App. No. 65161, unreported, 1994 WL 520856.

Lane submits that the result would have been different had his trial counsel not failed to (1) obtain an expert in molecular biology qualified to perform and understand DNA testing, (2) sufficiently investigate and examine the exact procedures employed by the coroner's lab and Cellmark with respect to sample condition and chain of custody, (3) subpoena the lab technician from Good Samaritan Hospital who found no evidence of motile or immotile sperm, (4) object to Forman's opinion as to a DNA match, (5) object to the state's introduction of the Cellmark casefile and x-ray films into evidence without foundation, and (6) object to DNA evidence obtained beyond the scope of Lane's consent. We find that Lane has failed to prove that any of these alleged errors would likely have caused the trial court to reach a different conclusion.

Lane does not offer any proof that an expert in molecular biology would have challenged Cellmark's findings that the DNA in Lane's blood matched the DNA in the stained sheet from the crime scene. Lane fails to demonstrate that the procedures used by the coroner's lab or Cellmark compromised the samples or tests and, therefore, cannot claim that an investigation would have allowed a challenge to the admissibility of the DNA evidence. Lane does not offer any proof that he had either motile or immotile sperm, or that the sperm obtained from the crime scene was either motile or immotile. Therefore, we fail to see how the witness from Good Samaritan Hospital would have exonerated Lane. We have already stated that even without Forman's testimony, the admitted Cellmark casefile contains a report signed by Julie Cooper that establishes a DNA match between Lane's blood and the stained sheet. We have also already stated that Lane has offered no proof that the DNA test was not contemplated by the consent given to the coroner's lab to conduct tests on the samples taken. We hold that Lane has failed to meet his burden to show that the trial's outcome would likely have been different without any of these errors.

We find the remaining alleged error more problematic. The state argues that the casefile was a business record. In *State v. Fontenette* (Sept. 19, 1991), Cuyahoga App. No. 59014, unreported, 1991 WL 184324, the Eighth District Court of Appeals held that records of DNA evidence prepared for trial are admissible as a business records exception to the hearsay rule pursuant to

Evid.R. 803(6). However, we disagree that the Cellmark casefile is a business record.

Evid.R. 803(6) and R.C. 2317.40 require that the evidence sought to be introduced must be generated by a systematic entry kept in the ordinary course of business. Where a document generally satisfies the elements of Evid.R. 803(6), but was prepared in anticipation of litigation, the underlying rationale of trustworthiness is supplanted by a natural motivation to color the facts in favor of the requesting entity. See *Palmer v. Hoffman* (1943), 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645, 649–650; *McGuire v. Mayfield* (Dec. 9, 1991), Allen App. Nos. 1–90–83 and 1–90–88, unreported, 1991 WL 261831; *State v. Howard* (Nov. 18, 1991), Marion App. No. 9–91–17, unreported, 1991 WL 240042; *State v. Sutton* (July 1, 1991), Butler App. No. CA90–01–001, unreported, 1991 WL 118202; *State v. McGraw* (June 19, 1991), Medina App. No. 1978, unreported, 1991 WL 116301; Weissenberger, Hearsay: Business Records and Public Records (1982), 52 U.Cin.L.Rev. 42. In *Palmer*, the United States Supreme Court held that records prepared for use in litigation were not "typical of entries made systematically as a matter of routine * * * to reflect transactions with others or to provide internal controls." *Id.*, 318 U.S. at 113, 63 S.Ct. at 480, 87 L.Ed. at 649. The court stated that "[p]reparation of cases for trial by virtue of being a 'business' or incident thereto would obtain the benefit of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation." (Citation omitted.) *Id.* at 113, 63 S.Ct. at 480, 87 L.Ed. at 650.

If experts were permitted to prepare documentation of their findings and submit the documentation as a business record because, as experts, they prepared the documentation pursuant to their normal course of business, then they would be permitted to introduce a great degree of bias into the proceedings and would never be subject to cross-examination.

The DNA casefile prepared by Cellmark was certainly prepared as part of its business. Yet the casefile was prepared for the sole purpose of litigation and, therefore, lacks the requisite trustworthiness. If it were admitted as a business record, Lane would never have the opportunity to object to the contents or cross-examine the person who conducted the test, because testimony would be rendered unnecessary as the file would speak for itself.

For this reason, we reject the reasoning in *Fontenette* and hold that the Cellmark casefile and x-ray films are not admissible under the business record

exception to hearsay. However, the prosecutor could have easily avoided this difficulty had she brought the molecular biologist as a witness, subject to cross-examination by the defense.

Despite our holding that the casefile was not a business record, it appears that the trial strategy of the defense was aimed toward refuting the statistical evidence of the population geneticist, not toward attacking the protocol or results in Cellmark's lab. In fact, the defense expert relied on Cellmark's data to challenge the statistical evidence provided by Forman.

Therefore, we hold that Lane has failed to sustain his burden to prove that the actions of the trial counsel bear no reasonable relationship to a legitimate (albeit less than optimal) trial strategy, and overrule the sixth assignment of error.

## IX. Conclusion

We overrule all assignments of error for the reasons stated above. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

GORMAN, P.J., and DOAN, J., concur.