DECISION
Following a bench trial, appellant Christopher L. Brown was convicted of voluntary manslaughter, a first-degree felony. Brown stabbed his roommate, Stanley Small, during an argument. Small died because of a stab wound to his chest that entered the pulmonary artery.
On appeal, Brown asserts five assignments of error. In his first and third assignments, he challenges the sufficiency and the weight of the evidence supporting his conviction. In his second assignment, he contends that the trial court erred by overruling his Crim.R. 29 motion for judgment of acquittal. Brown's fourth assignment asserts that the trial court erred by allowing the deputy coroner to provide expert testimony about blood-splatter evidence. In his fifth assignment, Brown claims that the trial court erred by allowing the state to "testify" by asking the deputy coroner leading questions. Last, Brown argues that the presentation of the victim-impact statements exceeded their proper scope and violated his due process rights.
We address the first three assignments together, recognizing that different standards are required for our review of the sufficiency challenges asserted in Brown's first and third assignments and the weight challenge contained in his second assignment. In reviewing Brown's sufficiency-of-the-evidence claims, we must examine the evidence presented at trial and determine whether the evidence, viewed in a light most favorable to the state, could have convinced any rational trier of fact that Brown was guilty of voluntary manslaughter beyond a reasonable doubt.[1] Our review of his challenge to the trial court's denial of his Crim.R. 29 motion requires us to determine whether the evidence "is such that reasonable minds [could] reach different conclusions" as to whether the state had proved each material element of the offense beyond a reasonable doubt.[2] In contrast, in reviewing the weight-of-the-evidence question, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]
Voluntary manslaughter prohibits a person, "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force," from knowingly causing the death of another.[4] "Knowingly" is defined as the awareness by a person "that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[5] "Knowingly," as used in the manslaughter statute, requires not that the defendant intend to cause the death, but that the defendant knowingly act with an awareness that his conduct probably will cause death.[6] Where "the mental state of an accused is an essential element of the offense, it is generally the case that the prosecution must rely upon circumstantial evidence to sustain its burden of proof at trial."[7] Brown argues that the state failed to prove that he knowingly stabbed Brown.
The evidence demonstrates that Brown and Small began arguing when Brown arrived home from work later than expected. According to the information Brown provided Cincinnati police officer Robert Heinlein, Small punched him in the eye, and Brown responded by striking Small with an unidentified object. (Brown did have an injury to his eye.) Small then ran to the bathroom and Brown tried to enter. Once Brown opened the bathroom door, Small fell toward the bathtub and started convulsing.
The argument awoke the woman who lived in the apartment below theirs. She heard yelling and screaming and portions of the argument. She testified that Small sounded frightened and used the words "stab" and "kill" in what she believed to be in the context of a plea for Brown not to kill or stab him. She next heard Small scream. She did not hear Small's voice after that.
Brown called 911 and, as instructed, attempted to provide Small with cardiopulmonary resuscitation until help arrived. The fire department and police officers arrived simultaneously. The firemen provided cardiopulmonary resuscitation and called for the paramedic unit. One of the paramedics noticed a small puncture in the chest area, but did not know at the time whether the wound was caused by a bullet or by a knife.
The police found a knife blade with blood near the kitchen sink and the knife's handle leaning against the television in the bedroom. Small's autopsy revealed knife wounds in his chest and on the outside of his left arm. Small's blood was on the blade of the knife.
Although Brown could not recall what object he used to strike Small, he did not deny striking him in response to being punched. The evidence indicates that Small was stabbed with a knife in the heart and died within a few moments of the stabbing. The only people present were Small and Brown. A neighbor heard Small refer to being stabbed and killed, followed by a scream. The bathroom door was broken and the apartment was in disarray. The circumstantial evidence was sufficient to demonstrate that Brown knowingly acted with awareness that he would probably cause Small's death. Further, we conclude that the evidence presented was sufficient to demonstrate voluntary manslaughter and that the trial court did not err in denying Brown's Crim.R. 29 motion for acquittal. Brown's first and third assignments are overruled.
Reviewing the record in light of Brown's weight-of-the-evidence challenge, we conclude that the trial court did not lose its way in resolving conflicts in the evidence and create a manifest miscarriage of justice. Brown's second assignment is overruled.
Brown's fourth and fifth assignments challenge the court's decision to allow the deputy coroner to testify about blood splatters without being qualified as an expert in that area, and to allow the state to ask leading questions of the deputy coroner on that issue. Brown objected to the line of questioning based both on the deputy coroner's lack of qualifications as a bloodstain-pattern expert and on the state's leading questions on that issue. We consider these two assignments together.
The deputy coroner, Dr. Dorothy Dean, testified that she was a medical doctor, board-certified in general pathology, and had been employed as a deputy coroner with the Hamilton County Coroner's Office since July of 1998. At that point, Brown's counsel stipulated to her qualifications. Dean later testified that blood-splatter evidence was part of her training. From photographs of the scene, she identified blood found in the apartment as being in transfer patterns and smear-transfer patterns and testified that both types would be consistent with an injured person touching his blood and then touching the areas where the blood was found. She also identified blood-splatter patterns from photographs of the apartment and explained that such patterns resulted from a wound bleeding forcefully or a weapon being withdrawn from a body flinging blood. She explained that Small's wound was not the type that would forcefully spurt blood, but that the splatter patterns in the apartment would be consistent with a knife being removed from Small's body.
The Ohio Supreme Court has recently addressed what qualifications are necessary to accord a witness expert status in State v.Baston.[8] According to its interpretation of Evid.R. 702, a witness may qualify as an expert by reason of her knowledge, experience, skill, training, or education. Neither special education nor certification is necessary to confer expert status. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function. Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion.[9]
The court analyzed whether the deputy coroner had properly been qualified as an expert, using a plain-error standard when no objection had been made and a harmless-error standard when an objection had been made.
Blood-splatter evidence can play an important role in a trial. As one treatise has explained, Expert testimony regarding the analysis and interpretation of "blood splatters" examined during criminal investigations may be a valuable part of the evidence used by prosecutors, and at times defense attorneys, to reconstruct the events occurring at the time of the alleged crime. By considering facts such as the shape or pattern made by the blood upon impact, the location of the blood splatters, and the mathematical correlation between the length and width of the splatters, experts have been able to make a variety of determinations relating to the reconstruction of crimes by applying general principles of physics, chemistry, biology, and mathematics. Frequently, blood splatter interpretation has been used to establish the location of the victim or attacker during a homicide. Blood splatter analysis has also provided evidence regarding facts such as the cause of death, the amount of force used against the victim, the number of blows struck, the assailant's infliction of the blows, and the assailant's presence during the attack.[10]
When Brown's counsel objected to the deputy coroner's qualifications to testify about blood-splatter and transfer evidence, the trial court overruled the objection, but stated that it would be "real surprised" if Dean could identify the type of blood stain depicted in one of the state's exhibits. Dean, however, did identify the type of bloodstain and further testified as we have outlined above. "A coroner is an expert witness who is permitted to give an opinion on matters within the scope of his expertise."[11] In this case, the only evidence of Dean's expertise in bloodstain-pattern analysis was her comment that it was part of her training. While a coroner may be an expert in bloodstain-pattern analysis, the fact that someone is a coroner is alone insufficient to qualify that person as an expert in blood splatters. In cases in other jurisdictions where courts have allowed a coroner to testify as an expert witness regarding bloodstain-pattern analysis, the courts have required more of a foundation than merely a statement of the coroner's position.[12]
An example of an acceptable foundation to accord a person expert status in bloodstain-pattern analysis can be found in State v.Deel.[13] In that case, the court allowed a witness who was not a coroner to testify as an expert in bloodstain-pattern analysis, where she testified that she had attended a detailed one-week seminar on the subject, where she "listened to lectures, discussed bloodstain pattern analysis, and did extensive hands-on experimentation and interpretation in bloodstain pattern analysis."[14] The witness also testified that she had conducted her own blood splattering experiments to sharpen her skills.[15]
We conclude in this case that the trial court abused its discretion by allowing Dean to testify as an expert in blood splatters and transfers without a proper foundation. There was no evidence of the extent or amount of Dean's training in the area or of her experience using bloodstain-pattern analysis. We also conclude that the state asked her improper leading questions. We hold, however, that such error was harmless beyond a reasonable doubt.[16] In a bench trial, a presumption exists that the trial court has relied "only on relevant, material, and competent evidence in arriving at its judgment."[17]
In rendering its decision here, the trial court did not refer to the blood-splatter testimony. It stated that the photographs, the condition of the apartment with furniture in disarray, the broken bathroom door, the 911 tape, the statements of Brown to the investigating officers, and the neighbor's testimony all demonstrated that Brown knowingly stabbed Small in a fit of rage brought on by Small, and that the stab wound caused Small's death. (Presumably, because there was no reference by the trial court to Dean's inadmissible testimony, the trial court was not influenced by it.) Without the blood-splatter testimony of Dean, which provided evidence of where in the apartment the knife was withdrawn and provided additional evidence that a stabbing had occurred, we conclude that the properly admitted evidence overwhelmingly proved Brown's guilt. We overrule Brown's fourth and fifth assignments.
In his last assignment, Brown asserts that the trial court committed plain error in allowing victim-impact evidence beyond the scope of R.C. 2947.051 and 2930.14. The record demonstrates that, at the sentencing hearing, Small's two sisters, his brother, and a cousin spoke. There was no objection made. While, arguably, some of the statements made by family members were outside the bounds of propriety, including responses by Small's family to Brown's statement at sentencing, we do not believe that Brown has sufficiently demonstrated his claim that the trial court was "infected with excess emotion." The trial court did not sentence Brown to the maximum term. And imposing sentence, the trial court did not refer to the statements of Small's family members while otherwise ruling in accordance with the felony-sentencing statutes. Thus, we overrule Brown's sixth assignment and affirm the judgment of conviction.
Judgment affirmed.
 Hildebrandt, P.J., and Doan, J., concur.
Please Note
The court has placed of record its own entry in this case on the date of this release of this Opinion.
[1] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[3] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720.
[4] R.C. 2903.03(A).
[5] R.C. 2901.22(B).
[6] See State v. Chandler (June 21, 1990), Franklin App. No. 89AP-809, unreported.
[7] State v. Kidd (Jan. 5, 1983), Hamilton App. No. 820093, unreported.
[8] State v. Baston (1999), 85 Ohio St.3d 418, 709 N.E.2d 128, certiorari denied (1999), ___ U.S ___, 120 S.Ct. 587.
[9] Id. at 423, 709 N.E.2d at 133, (citations deleted).
[10] Annotation, Admissibility, in Criminal Prosecution, of Expert Witness Opinion Evidence as to "Blood Splatter" Interpretation (1993), 9 A.L.R.5th 369, 381.
[11] State v. Heinish (1990), 50 Ohio St.3d 231, 234,553 N.E.2d 1026, 1030.
[12] See Annotation, Admissibility, in Criminal Prosecution, of Expert Witness Opinion Evidence as to "Blood Splatter" Interpretation (1993), 9 A.L.R.5th at 425-427, citing Robinson v.State (Ala.Crim.App. 1990), 574 So.2d 910, and State v. Rodgers
(Idaho 1991), 119 Idaho 1047, 812 P.2d 1208.
[13] State v. Deel (Sept. 30, 1986), Lake App. No. 11-062, unreported.
[14] Id.
[15] See id.
[16] See Crim.R. 52(A).
[17] State v. Lane (1995), 108 Ohio App.3d 477, 484,671 N.E.2d 272, 276-277.