DECISION AND JOURNAL ENTRY
Appellant Daniel Yeager, a.k.a. Danie Yeager, appeals from his convictions in the Summit County Court of Common Pleas. We affirm in part and reverse in part.
 I.
On October 16, 1998, the Summit County Grand Jury rendered a one hundred and twelve count indictment involving thirty-one defendants, including Yeager. The indictment alleged that Yeager committed one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A), one count of conspiracy to engage in a pattern of corrupt activity, in violation of R.C.2923.01(A)(2) and 2923.32(A), and one count of trafficking in cocaine, in violation of R.C. 2925.03(A). Yeager pleaded not guilty to the charges against him.
A jury trial commenced on March 22, 1999. Yeager was tried jointly with three other defendants listed in the indictment — Otis McDay, Bobby Petty, and Polly Petty. The trial lasted six days, with twenty-four witnesses testifying on behalf of the State. Nine of the witnesses were other people who had been named in the indictment with the four codefendants. Yeager did not present any witnesses or evidence. After deliberating, the jury found Yeager guilty of engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, and trafficking in cocaine. The trial court imposed a five-year prison term for the engaging in a pattern of corrupt activity charge, a three-year prison term for the conspiracy charge, and a one-year prison term for the trafficking in cocaine charge. The trial court also ordered that the prison terms be served consecutively.
Yeager appeals, assigning eleven errors. We will address each in due course, consolidating related assignments of error to facilitate discussion.
 II. A. Prosecutorial Misconduct First Assignment of Error
The Trial Court erred in its conviction and sentencing of Defendant as certain misconduct of the prosecuting attorney violated the Appellant's right against self incrimination [sic] and due process in that the misconduct was material and prejudicial to the accused and denied the Appellant a fair trial.
Yeager argues in his first assignment of error that prosecutorial misconduct deprived him of a fair trial. He complains of three specific instances: First, he alleges that the prosecutor discussed prior trial testimony with a witness in front of other witnesses. Second, he asserts that the State used coercive measures to obtain the testimony of one of its witnesses. Third, he contends that the State asked another witness an inappropriate question that only served to prejudice the four codefendants. We will address each of Yeager's arguments.
"The test for prosecutorial misconduct is whether [the prosecutor's conduct was] improper and, if so, whether [the conduct] prejudicially affected substantial rights of the accused." State v. Lott (1990), 51 Ohio St.3d 160, 165. The ultimate issue is whether the defendant was deprived of a fair trial. See State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. The alleged misconduct must be evaluated in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410.
 1. Separation of Witnesses
The first alleged instance of prosecutorial misconduct is taken from the testimony of Frank Kocis, one of the thirty other people indicted with Yeager. A separation of witnesses had been ordered in the case. Yeager's counsel cross-examined Kocis on his interactions with prosecutors and police officers:
 Q. [by Yeager's counsel]. How many times have you talked to either the police or the prosecutors when there's been other people that are witnesses in the same area?
 A. [by Kocis]. Whoever sits back here I guess would be a witness.
 Q. You're saying you had conversations with the police and the prosecutors in front of the other witnesses?
A. Uhm, a conversation?
Q. Yes.
A. Yeah.
 Q. And that conversation was loud enough obviously for the other people to hear?
A. Maybe.
Yeager argues that the prosecution violated the separation order by discussing prior testimony with Kocis and in front of other witnesses.
We first note that no objection or other action is made on the record with regard to the alleged violation of the separation of witnesses order. Thus, we can only take notice of the error if it rises to the level of plain error under Crim.R. 52(B). In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. State v. Lane (1995), 108 Ohio App.3d 477, 482.
We find no plain error. The record reveals that the cross-examination proceeded as follows:
 Q. Okay. And has anybody told you how other people have testified in this case?
A. Sure.
Q. Who has told you that, sir?
 A. Maybe people who were a witness here or have already testified.
 Q. How about the prosecutors or the police, have they ever told you how other people have testified?
A. No.
 Q. They haven't told you that certain people said certain things?
A. No.
The record clearly shows that prosecutors did not tell Kocis about prior testimony. There is also no evidence that any conversation between Kocis and prosecutors in front of other witnesses was heard by anyone else or dealt with any specific portion of Kocis' expected testimony. We cannot say that but for the alleged error the outcome of Yeager's trial would have been different.
 2. Witness Coercion
Next, Yeager complains of how the State obtained the testimony of Charles Capien, another of the individuals indicted with Yeager. Capien testified on Thursday, March 25, 1999. During cross-examination by Yeager's counsel, it was revealed that Capien had planned to plead not guilty to the charges against him, but that on Monday, March 22, 1999, at around noon, Capien received a telephone call from his attorney, who told him that if he did not go to the police station to talk with the police by 2:00 p.m., he (Capien) would be arrested and charged with additional offenses. Thereafter, Capien went to the police station, spoke with police, and agreed to cooperate with them. Yeager argues that Capien's coerced testimony was "clearly taint[ed]" by such conduct and that this form of coercion should not be tolerated.
Once again, we note that we review only for plain error, as no objection is found on the record. We decline to find plain error. Capien was fully cross-examined on the matter and the potential benefits that would accrue from his cooperation. The jury knew about it and was fully capable of understanding the implications of the coercion. In addition, Yeager has failed to demonstrate how he was prejudiced by the State's actions with Capien. The method used to persuade Capien to testify on behalf of the State did not deprive Yeager of a fair trial.
 3. Inappropriate Questioning
Yeager's final contention is that his right to a fair trial was violated by a question put to Jamie Rhoades, yet another person indicted with Yeager. After being cross-examined about what plea arrangements he had reached with the State, Rhoades was asked on redirect examination:
 Q. [by prosecutor]. Mr. Rhoades, your plea bargain with the State of Ohio is for you to testify truthfully; is that correct?
A. That's true.
 Q. And to your knowledge, anyone and everyone that was arrested certainly was given the same opportunity to cooperate with the police?
[Counsel for Yeager]: Objection.
[Counsel for Bobby Petty]: Objection.
THE COURT: Overruled. Do you know.
[Rhoades]: Can you ask me that again?
* * *
 Q. Is it your understanding that everyone was given the opportunity to cooperate with the police as you did?
 A. I don't know who all has, but I know I'm not the only one.
Yeager argues that the question violates his right against self-incrimination and that "[a] reading of the question shows there was no possible way for the witness to answer the question. It was simply a statement made by the prosecutor for the benefit of the jury."
We conclude that there was no violation of Yeager's right to a fair trial. Rhoades testified that he did not know who had been given an opportunity to cooperate with police, but that he was not the only one given that opportunity. As was evidenced during the trial, nine of the people indicted with Yeager, including Rhoades, received plea bargains and testified for the State. The issue of these witnesses' credibility was clearly before the jury. The question did not comment upon any negotiations with Yeager or Yeager's right to be free from self-incrimination. We cannot say that the outcome of the trial would have been different absent the question at issue.
In sum, Yeager was not deprived of a fair trial by the three alleged instances of prosecutorial misconduct. The first assignment of error is overruled.
 B. Admission of Exhibits
Tenth Assignment of Error
The Trial Court erred in allowing and permitting the introduction of State's Exhibit "2" and "17", over the objection of Defendant.
Yeager argues in his tenth assignment of error that the trial court should not have admitted two of the State's exhibits. On March 18, 1997, Detective Jason Malik of the Akron Police Department and a confidential informant bought six grams of cocaine from Yeager. After the buy, another police officer performed a field test that initially confirmed that the substance was cocaine. The cocaine was later analyzed by the Ohio Bureau of Criminal Identification and Investigation ("BCII"). At trial, the cocaine was introduced as Exhibit 2, and the BCII analysis of the cocaine was submitted as Exhibit 17. Exhibit 2, as received by BCII, contained 2.31 grams of cocaine that was marked as being "[v]ery weak." Exhibits 2 and 17 were initially marked as being from "John Doe." At some point after the BCII analysis, the John Doe was replaced with Yeager's name. When the State moved to admit Exhibits 2 and 17, Yeager objected. The trial court overruled the objection and admitted the exhibits into evidence.
Yeager now argues that the trial court should have excluded Exhibits 2 and 17. He contends that there was no evidence to link the exhibits to him and that there was insufficient evidence of the chain of custody of the exhibits. Yeager's arguments are not well taken.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
We find that the trial court did not abuse its discretion by admitting the two exhibits. While the exhibits were marked as pertaining to "John Doe" prior to BCII analysis, they also bore a specific case number. Detective Malik testified that the case number was the number assigned to Yeager. In addition, even if there are difficulties in the chain of evidence, the lack of testimony completing the chain does not render the evidence inadmissible. State v. Ewing (Apr. 14, 1999), Lorain App. No. 97CA006944, unreported, at 12. Rather, the chain of evidence question bears on the weight that the evidence should be given.Id. We cannot say that the admission of Exhibits 2 and 17 constituted an abuse of discretion by the trial court. Yeager's tenth assignment of error is overruled.
 C. Manifest Weight of the Evidence
Second Assignment of Error
 The Trial Court incorrectly overruled Defendant's motion for acquittal under Criminal Rule 29 as there was insufficient evidence to convict him of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and conspiracy to engage in a pattern of corrupt activity, a violation of [R.C.] 2923.01(A)(2), and that the conviction was against the manifest weight of the evidence presented.
 Third Assignment of Error The Trial Court incorrectly overruled Yeager's motion for acquittal under Rule 29 as there was insufficient evidence to support a conviction for engaging in a pattern of corrupt activity or conspiracy to engage in a pattern of corrupt activity as one of the predicate offenses, namely Count 102 of the indictment, had absolutely no nexus or relationship whatever to the "enterprise" as claimed to exist in Count 100 or 101 of the indictment.
 Eighth Assignment of Error The Trial Court erred in not granting Defendant's Rule 29 motion for acquittal as his convictions on Count 100 and Count 101 were not supported by the manifest weight and sufficiency of the evidence as there was no showing of the existence of an enterprise, finding of the requisite predicate acts, and/or demonstration of a pattern of corrupt activity.
In his second, third, and eighth assignments of error, Yeager argues that his convictions for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity were against the manifest weight of the evidence.[1] We shall address each offense individually.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 1. Engaging in a Pattern of Corrupt Activity
Yeager was convicted on one count of engaging in a pattern of corrupt activity. R.C. 2923.32(A)(1) states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]" As used in the statute, "`[e]nterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).
 "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
R.C. 2923.31(E). At least one of the incidents of corrupt activity must be a felony. Id. The two or more incidents of corrupt activity need not be supported by convictions, but they must be proven beyond a reasonable doubt. State v.Burkitt (1993), 89 Ohio App.3d 214, 222-23.
R.C. 2923.31(I) defines what activities may be regarded as "corrupt activity." Included in the statute are incidents that would constitute
 [a]ny violation of section * * * 2925.03 * * * of the Revised Code [trafficking in a controlled substance], [or] any violation of section 2925.11 of the Revised Code [possession of a controlled substance] that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996, * * * when the proceeds of the violation * * * or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, or any combination of violations described [above] when the total proceeds of the combination of violations * * * or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars[.]
R.C. 2923.31(I)(2)(c). Possession of cocaine is at least a fourth degree felony "[i]f the amount of the drug involved exceeds five grams * * * of cocaine that is not crack cocaine or exceeds one gram * * * of crack cocaine[.]"[2] R.C.2925.11(C)(4)(b). Greater quantities of cocaine would result in felonies of greater degrees. See R.C. 2925.11(C)(4)(c)-(f).
In relation to the charges against Yeager, the State presented the testimony of nine witnesses, including four people who were also charged in the indictment against Yeager. William Roberts and Lisa Bolinger Roberts shared an apartment with Yeager on Archwood Avenue in Akron. William testified that he and Yeager bought cocaine from Bobby Petty and then resold it. William also stated that, on four or five occasions between January 1998 and March 1998, he went to Bobby Petty's residence, picked up cocaine for Yeager, and then brought the cocaine back to Yeager at the Archwood Avenue apartment.
William and Yeager were also involved in two drug buys involving undercover deputies from the Summit County Sheriff's Office. On February 17, 1998, two deputies purchased mushrooms containing psilocybin (a controlled substance) from William for $100. Yeager was present at all times during the transaction. William testified that the mushrooms were Yeager's. Shortly thereafter, William was driving his car, with Yeager as a passenger, when the car was stopped by another sheriff's deputy. During the traffic stop, the $100 of buy money was found on Yeager, and one-fourth ounce of marijuana was found under the passenger seat of the car.
On March 2, 1998, the same two undercover deputies purchased one-eighth ounce of cocaine from William for $150 at the Archwood Avenue apartment. Yeager was again present at all times. When the deputies asked why the price was $150, William looked at Yeager and said that Yeager sold him the cocaine for that price and that he (William) was not making any money on the transaction. When William and Yeager were arrested later that day, $70 of the buy money was found on Yeager and $40 was found on William. A search of the Archwood Avenue apartment produced part of a psilocybin mushroom and a baggie with cocaine residue in Yeager's room.
Gloria Bolinger Roberts shared the Archwood Avenue apartment with William and Yeager. Gloria testified that she had slept with Yeager for a period of time but later became involved with (and subsequently married) William. She testified that she, William, and Yeager all sold cocaine that had been obtained from Bobby Petty "on front" and that either William or Yeager repaid Bobby Petty after the cocaine had been sold. Gloria also stated that, for over three months, she made at least one trip a week to Bobby Petty's residence to pick up one or two ounces of cocaine for Yeager.
Orlando Rich was named in the indictment with Yeager. He testified that during the winter of 1996 he made two cocaine purchases from Yeager. The first was one gram of cocaine for $60. The second sale occurred a couple months later, with Yeager selling fifteen grams for $250 or $300. Rich stated that he then sold the cocaine to someone else.
Jamie Rhoades and Charles Capien were also named in the indictment. Rhoades testified that he lived with Yeager before Yeager lived in the Archwood Avenue apartment and that Yeager sold cocaine "all day and all night." He went on to say that Yeager sold "ounces of cocaine a week" and that he had gone with Yeager to Bobby Petty's residence twice to purchase cocaine. Capien testified that he delivered at least an ounce of cocaine from Bobby Petty to Yeager two or three times. He also stated that while at Bobby Petty's residence, he had seen Bobby Petty weigh up cocaine and toss it to Yeager.
Detective Jason Malik of the Akron Police Department testified about a purchase of cocaine from Yeager. He stated that on March 18, 1997, he and a confidential informant bought six grams of cocaine from Yeager for $250.
Various witnesses testified as to the price of cocaine. There was testimony that the price of one ounce of cocaine was between $700 and $1300.
Having reviewed the record, we conclude that Yeager's conviction for engaging in a pattern of corrupt activity was not against the manifest weight of the evidence. There was an enterprise, with Yeager having conducted numerous drug transactions with Bobby Petty, William Roberts, Gloria Bolinger Roberts, and Jamie Rhoades. There was abundant testimony that Yeager bought, possessed, or sold cocaine at least twice, and that the dollar value of each incident exceeded $500.
Yeager asserts that the conviction is against the manifest weight of the evidence because most of the witnesses against him were admitted drug dealers and users and/or were also named in the indictment and had reached plea agreements with the State. Yeager also contends that there were inconsistencies in the testimony. However, these facts do not lead to a per se determination that the witnesses are not credible. The determination of the credibility of the witnesses is primarily within the province of the jury. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Through extensive cross-examination of the witnesses, the jury was fully aware of the witnesses' possible interest in their testimony, their potential lack of credibility, and any inconsistent testimony. The evidence in this case does not weigh heavily in Yeager's favor. The conviction was not against the manifest weight of the evidence.
2. Conspiracy to Engage in a Pattern of Corrupt Activity
Yeager was also convicted of one count of conspiracy to engage in a pattern of corrupt activity. R.C. 2923.01(A)(2) states: "No person, with purpose to commit or to promote or facilitate the commission of * * * engaging in a pattern of corrupt activity * * * shall * * * [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of * * * the specified offense." R.C. 2923.01(B) further requires that
 [n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
"[A]n overt act is an open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." State v. Papp
(1980), 68 Ohio App.2d 21, 23.
The indictment against Yeager alleged that he conspired with "Otis McDay and/or Robert Petty and/or Jamie Rhoades and/or William Roberts and/or others[.]" As was discussed above, there was ample testimony that Yeager conducted drug transactions with Bobby Petty, William Roberts, and Jamie Rhoades. The two undercover drug buys that occurred on February 17, 1998, and March 2, 1998, were overt acts in furtherance of the agreement to conduct the affairs of this extensive drug ring. The evidence did not weigh heavily in favor of Yeager. Accordingly, the conviction for conspiracy to engage in a pattern of corrupt activity was not against the manifest weight of the evidence.
Yeager's convictions for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity were not against the manifest weight of the evidence. Accordingly, those portions of Yeager's second, third, and eighth assignments of error dealing with manifest weight are overruled.
D. Sufficiency of the Evidence
Yeager also argues that his convictions were not supported by sufficient evidence and that, as a result, the trial court should have granted his motion for acquittal. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
This court has held that "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Because we have determined that Yeager's convictions were not against the manifest weight of the evidence, his arguments regarding the sufficiency of the evidence must also fail. The remaining portions of the second, third, and eighth assignments of error are overruled.
E. Allied Offenses of Similar Import
Fifth Assignment of Error
 The Trial Court erred and violated Defendant's rights when it imposed consecutive sentencing upon the Defendant for the violation of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, as said consecutive sentencing scheme is in direct contradiction to that permitted by R.C. 2941.25.
 Ninth Assignment of Error The Trial Court erred and violated Defendant's right to be free from double jeopardy when it convicted and sentenced him for both engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity.
Yeager argues in his fifth and ninth assignments of error that the trial court erred by permitting him to be convicted and sentenced for both engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity. He asserts that the two offenses are allied offenses of similar import and that convictions for both cannot stand under R.C. 2941.25. We disagree.
R.C. 2941.25 provides:
 (A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
However, R.C. 2923.32(B)(1) states in pertinent part: "Notwithstanding any other provision of law, a person may be convicted of violating the provisions of [R.C. 2923.32] as well as of a conspiracy to violate one or more of those provisions under [R.C. 2923.01]." In State v. Wilson (1996),113 Ohio App.3d 737, 748, this court stated that "[i]n the case of the offenses of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, the General Assembly has specifically provided for separate punishments for those crimes." We choose to adhere to the precedent of this court.
By virtue of R.C. 2923.32(B)(1), Yeager's convictions are not allied offenses of similar import under R.C. 2941.25. As such, the trial court did not err by permitting Yeager to be convicted of and sentenced for both offenses. The fifth and ninth assignments of error are overruled.
F. Lesser Included Offenses
Fourth Assignment of Error
 The Trial Court violated Defendant's right to be free from double jeopardy when it convicted and sentenced him for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity when the Defendant had already been convicted of, and sentenced to, certain of the offenses upon which the conviction was predicated.
In his fourth assignment of error, Yeager contends that his convictions for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity violate the Double Jeopardy Clause of the United States Constitution. Prior to his indictment in the case at bar, Yeager pleaded guilty to one count of trafficking in cocaine and one count of aggravated possession of drugs. As mentioned previously, these charges related to the two undercover buys by two detectives of the Summit County Sheriff's Office that occurred on February 17, 1998, and March 2, 1998. Testimony about the events underlying the convictions was introduced at trial in this case; the State argued that these crimes constituted incidents of corrupt activity. Yeager now argues that his prior convictions were lesser included offenses of his convictions for engaging in a pattern of corrupt activity and conspiracy, and that convictions on all such charges violates double jeopardy. We disagree.
"[T]he Double Jeopardy Clause prohibits the state from trying a defendant for a greater offense after a conviction of a lesser included offense." State v. Bickerstaff (1984), 10 Ohio St.3d 62,64.
 An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
 State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
We conclude that trafficking in cocaine, in violation of R.C.2925.03(A), and aggravated possession of drugs, in violation of R.C. 2925.11(A), are not lesser included offenses of engaging in a pattern of corrupt activity. One can engage in a pattern of corrupt activity, as defined in R.C. 2923.32(A), without trafficking in cocaine or possessing drugs. Both can be incidents of corrupt activity, as stated in R.C. 2923.31(I), but they are not the only possible offenses that may support a conviction for engaging in a pattern of corrupt activity.
We also conclude that trafficking in cocaine and aggravated possession of drugs are not lesser included offenses of conspiracy to engage in a pattern of corrupt activity. One can agree with another to engage in a pattern of corrupt activity without either trafficking in cocaine or possessing drugs.
Yeager's convictions that stemmed from his guilty pleas in an earlier case are not lesser included offenses of engaging in a pattern of corrupt activity or conspiracy to engage in a pattern of corrupt activity. Therefore, Yeager's convictions in the case at bar do not violate the Double Jeopardy Clause on those grounds. The fourth assignment of error is overruled.
G. Collateral Estoppel
Eleventh Assignment of Error
 The Trial Court erred in its ruling against the Defendant with respect to the Motion to Suppress which questioned the propriety of the instant matter on the grounds of res judicata [sic], collateral estoppel, and double jeopardy.
For his eleventh assignment of error, Yeager argues that his conviction for trafficking in cocaine in the instant appeal was barred by virtue of the prior prosecution of the charges that culminated in guilty pleas to trafficking in cocaine and aggravated possession of drugs. He contends, without citing any authority, that because the State knew about the conduct that formed the basis for the trafficking conviction in this case at the time he was indicted on the other two charges, the State was bound to prosecute all three at the same time and that the later prosecution was barred by the doctrine of collateral estoppel. Yeager's assertions are without merit.
The doctrine of collateral estoppel, as applied in criminal proceedings, is incorporated in the Double Jeopardy Clause. Statev. Phillips (1995), 74 Ohio St.3d 72, 80, citing Ashe v. Swenson
(1970), 397 U.S. 436, 445, 25 L.Ed.2d 469, 476. "Collateral estoppel means `simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v. Tanner (1993), 90 Ohio App.3d 761, 766-67, quoting Ashe, 397 U.S. at 443, 25 L.Ed.2d at 475. There are no issues of ultimate fact common to Yeager's two prosecutions. The trafficking in cocaine charge from the instant appeal stemmed from a transaction completely separate from the other two drug charges to which Yeager pleaded guilty. Collateral estoppel did not bar Yeager's prosecution for trafficking in cocaine in the case at bar. The eleventh assignment of error is overruled.
H. Sentencing Issues
Sixth Assignment of Error
 The Trial Court erred in sentencing the Defendant to consecutive sentences as consecutive sentencing was in direct violation of R.C. 2929.14.
 Seventh Assignment of Error The Trial Court erred in imposing sentence upon Defendant as it is violative of the law of the State of Ohio and, pursuant to R.C. 2953.08, the Defendant is entitled to appeal as a matter of right the imposition of the sentence.
In his sixth and seventh assignments of error, Yeager takes issue with the prison sentences imposed upon him. The trial court imposed a five-year term for engaging in a pattern of corrupt activity (a first degree felony), a three-year term for conspiracy (a second degree felony), and a one-year term for trafficking in cocaine (a fifth degree felony). The trial court also ordered that the three sentences be served consecutively. Yeager argues that the trial court erred by ordering that the prison terms be served consecutively. We agree.
R.C. 2929.14(E)(4) requires a trial court to make three findings before prison terms may be imposed consecutively.
[T]he court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [3] if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 Id. The trial court must also give its reasons for imposing the consecutive sentences. R.C. 2929.19(B)(2)(c); see, also,State v. Edmonson (1999), 86 Ohio St.3d 324, 328-29.
In the case at bar, the trial court made the following statements relevant to consecutive sentences:
 The Court is also going to impose consecutive sentences, and the Court is of the feeling that these are required to protect the public from further crimes of these Defendants, particularly Mr. Yeager here, and because of the seriousness of the serious harm that this crime — the seriousness of the offenses that were committed to the public, the community.
The sentencing record does not contain all of the findings required by R.C. 2929.14(E)(4), and the trial court did not state the reasons for its findings, as mandated by R.C.2929.19(B)(2)(c) and Edmonson. Therefore, we are compelled to reverse the sentence imposed by the trial court and remand the matter for resentencing in accordance with Edmonson. Yeager's sixth and seventh assignments of error are sustained.
 III.
Yeager's sixth and seventh assignments of error are sustained. The remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT BAIRD, J., WHITMORE, J., CONCUR.
[1] Yeager also argues in the same assignments of error that his convictions were not supported by sufficient evidence, using the same standard of review. However, the manifest weight standard and the sufficiency standard are distinct concepts with different standards of review. The sufficiency arguments will be addressed in a separate section of this opinion.
[2] Five grams equals 0.1765 ounces, or a little more than one-sixth of an ounce.