DECISION AND JOURNAL ENTRY
 I.
Mr. Zack was a police officer with the Elyria Police Department and became a member of its Neighborhood Impact Unit ("NIU") in 1992. The Neighborhood Impact Unit handles long-term constant neighborhood problems and assists the Narcotics Division. During his tenure with the Neighborhood Impact Unit, Mr. Zack had contact with numerous women in an area called Wilkes Villa, which was notorious for drug sales. Many of these women habitually used crack cocaine and were potential informants for the police department. Some of these women[1] accused Mr. Zack of abusing his position of authority and sexually abusing them.
On March 4, 1998, the Lorain County Grand Jury indicted Mr. Zack on twenty-two counts: six counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1); six counts of gross sexual imposition, in violation of R.C. 2907.05(A)(5); one count of felonious sexual penetration, in violation of R.C. 2907.12(A)(2); one count of attempted rape, in violation of R.C. 2923.02(A) and R.C. 2907.02(A)(2); one count of attempted sexual battery, in violation of R.C. 2923.02(A) and R.C. 2907.03(A)(6); four counts of sexual battery, in violation of R.C. 2907.03(A)(6); two counts of rape, in violation of R.C. 2907.02(A)(2); and one count of bribery, in violation of R.C. 2921.02(B). A seven day jury trial was held, and in a journal entry dated July 17, 1998, the trial court declared a mistrial, as the jury was unable to reach a decision on any of the counts in the indictment.
Subsequently, on August 26, 1998, the Lorain County Grand Jury filed a supplemental indictment and indicted Mr. Zack on one count of bribery, in violation of R.C. 2921.02(B), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1). On September 9, 1998, the Lorain County Grand Jury further indicted Mr. Zack on one count of rape, in violation of R.C.2907.02(A)(2).
A seven day jury trial was held, commencing on October 6, 1998. In a verdict journalized on October 16, 1998, the jury found Mr. Zack guilty of the following: (1) gross sexual imposition (two counts) and rape of Ms. Bowen; (2) bribery regarding Ms. Ulery; (3) bribery, gross sexual imposition, and sexual battery of Ms. Bateman; and (4) gross sexual imposition,[2] felonious sexual penetration, and attempted sexual battery of Ms. Wilson.[3] The jury acquitted Mr. Zack on the charges pertaining to Ms. Henry, Ms. Shelton, and Ms. Bartolotta. He was sentenced accordingly. This appeal followed.
 II.
Mr. Zack asserts four assignments of error. We will address each in due course.
 A.
Fourth Assignment of Error
 APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Mr. Zack asserts that his convictions are against the manifest weight of the evidence because the victims' testimonies were not credible as they had criminal records and were drug addicts. Further, Mr. Zack argues that the victims' testimonies were not corroborated, and therefore, his convictions should be reversed. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
In our review of the errors assigned by Mr. Zack, we will apply the Revised Code provisions, which were in effect at the time the various crimes were committed.
As a preliminary matter, we note that the jury had the opportunity to view the witnesses and adjudge their credibility, and therefore, the jurors' judgments must be given deference.State v. Lawrence (Dec. 1, 1999), Lorain App. No. 98CA007118, unreported, at 13.
Mr. Zack was convicted of two counts of bribery, in violation R.C. 2921.02(B), which states in relevant part:
 No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept for himself or another person any valuable thing or valuable benefit to corrupt or improperly influence him or another public servant or party official with respect to the discharge of his or the other public servant's or party official's duty.
 In the present case, we find that Mr. Zack's conviction for bribery was not against the manifest weight of the evidence. First, Mr. Zack was convicted of soliciting a bribe from Ms. Ulery. On April 4, 1994, Mr. Zack cited Ms. Ulery for driving under suspension and took her to the police station. Ms. Ulery testified that Mr. Zack suggested that if she gave him oral sex that he would drop the citation against her. She refused and eventually paid the ticket. However, when she went to court for the ticket, Mr. Zack gave her his telephone number. Ms. Ulery's friend Angel Brummitt, who accompanied Ms. Ulery to court, testified that she observed Mr. Zack leaning close to Ms. Ulery and saw him pass her a piece of paper. Later, Ms. Ulery showed Ms. Brummitt the piece of paper, which had a telephone number on it. Thus, as Mr. Zack solicited sexual favors in exchange for leniency, we conclude that the jury did not commit a manifest miscarriage of justice in finding that Mr. Zack had knowingly solicited a bribe from Ms. Ulery.
The jury also convicted Mr. Zack of soliciting a bribe from Ms. Bateman. On February 7, 1995, Mr. Zack stopped Ms. Bateman for not using a turn signal and asked her to hand over any drugs that were on her person, which she did. Ms. Bateman testified that in the interview room at the police station, Mr. Zack said that the two of them could work this out so that she did not have to get charged for possession of drugs. She asked what she had to do. In response, Mr. Zack stood against the doorway, unzipped his pants exposing his genitalia, and gestured as to how they could work out a dismissal of the charges. Ms. Bateman subsequently performed oral sex on Mr. Zack. Ms. Bateman was never charged with possession of drugs from that incident. Moreover, Officer C.B. Warfield discovered a file on Ms. Bateman that contained crack cocaine and other drug paraphernalia stored in an extra desk. Mr. Zack testified that he never removed the physical evidence from the desk because he was placed on administrative leave before he could complete the requisite paperwork. Nevertheless, we conclude that the jury did not clearly lose its way in finding that Mr. Zack solicited a bribe from Ms. Bateman.
Mr. Zack also asserts that his conviction on four counts of gross sexual imposition were against the manifest weight of the evidence. R.C. 2907.05(A)(1) states in pertinent part:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:
 (1) The offender purposefully compels the other person * * * to submit by force or threat of force.
 "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
In this case, we find that the jury did not act against the manifest weight of the evidence in convicting Mr. Zack of gross sexual imposition of Ms. Bateman, Ms. Bowen, and Ms. Wilson. As noted above, Mr. Zack took Ms. Bateman to the police station after she admitted to possessing drugs. While at the station, Mr. Zack placed Ms. Bateman in the interview room with no window, held the door shut with his foot, and strip-searched her. Ms. Bateman testified that although she had undone her bra so that any hidden crack cocaine would fall out, Mr. Zack still felt her bare breasts. Numerous police officers at the Elyria Police Department testified that a male officer with the Neighborhood Impact Unit was not supposed to be alone in an interview room with a female prisoner. Further, a male officer is forbidden to strip-search a female prisoner, according to Detective Scott Ashley.
Similarly, on January 31, 1995, Ms. Bowen was arrested and brought down to the police station. Ms. Bowen testified that Mr. Zack took her into the interview room with no window, held the door shut with his foot, and strip-searched her for drugs. Ms. Bowen removed her bra, but had her panties on. She stated that Mr. Zack felt her naked breasts and touched her between her legs. Afterwards, Mr. Zack released her but told her to return in a couple of days, as she could work for the police as an informant. A few days later, on February 2, 1995, Ms. Bowen returned to the police station. Again, Mr. Zack strip-searched her, pulling up her bra and exposing her breasts. He felt around her breasts. He also pulled her underwear to one side and rubbed her genitals.
Similarly, on February 8, 1995, Mr. Zack arrested Ms. Wilson and took her to the police station. While Mr. Zack and Ms. Wilson were alone in the interview room, Mr. Zack strip-searched Ms. Wilson. According to her testimony, Mr. Zack reached under her sports bra and fondled her breasts. Subsequently, he had other improper sexual contact with Ms. Wilson. Accordingly, after thoroughly reviewing the record, we find that the jury did not commit a manifest miscarriage of justice in concluding that Mr. Zack was guilty of gross sexual imposition of Ms. Bateman, Ms. Bowen, and Ms. Wilson.
Mr. Zack was convicted of the sexual battery of Ms. Bateman, in violation of R.C. 2907.03(A)(6), which states:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
* * *
 (6) The other person is in custody of law * * * and the offender has supervisory or disciplinary authority over such other person.
 "Sexual conduct" is defined as vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 R.C. 2907.01(A). As mentioned above, while in the interview with Mr. Zack, Ms. Bateman performed fellatio on Mr. Zack in exchange for the charges against her being dropped. Thus, we cannot say that Mr. Zack's conviction for sexual battery is against the manifest weight of the evidence.
The jury also convicted Mr. Zack of the attempted sexual battery of Ms. Wilson, in violation of R.C. 2923.02(A) and2907.03(A)(6). R.C. 2923.02(A) defines an attempt and states that "[n]o person, purposefully or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." The statutory standard for sexual battery is set forth above. As previously noted, after arresting Ms. Wilson, Mr. Zack took her into an interview room and strip-searched her. After fondling her breasts, he had her pull her boxer shorts down and her panties came down with them. According to Ms. Wilson's testimony, Mr. Zack then placed his finger inside of her vagina. Afterwards, he told her to turn around and bend over. He then attempted to perform anal intercourse; however, Ms. Wilson pulled away before he could complete the act. Ms. Nimon, a licensed practical nurse at the Lorain County Correctional Facility, testified that Ms. Wilson's panties had droplets of blood on them. As such, we conclude that the jury did not act against the manifest weight of the evidence in convicting Mr. Zack of attempted sexual battery of Ms.Wilson.
Mr. Zack was convicted of the felonious sexual penetration of Ms. Wilson, in violation of R.C. 2907.12(A)(2),[4] which states that "[n]o person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another when the offender purposely compels the other person to submit by force or threat of force." As previously discussed, Mr. Zack placed his finger inside of Ms. Wilson's vagina during his strip-search of her. Hence, we hold that the jury did not commit a manifest miscarriage of justice in convicting Mr. Zack of felonious sexual penetration.
Mr. Zack was also found guilty of the rape of Ms. Bowen, in violation of R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." In the present case, Ms. Bowen testified that after Mr. Zack strip-searched her as described above, he unzipped his pants and pulled his underwear to one side, exposing both his tattoo and his genitals. He pushed her head down and forced her to perform oral sex. During the investigation, Ms. Bowen was able to describe Mr. Zack's tattoo and identify a similar tattoo in a tattoo line-up.[5] Consequently, we conclude that the jury did not act against the manifest weight of the evidence in convicting Mr. Zack of rape.
After carefully reviewing the entire record, we hold that the jury did not act against the manifest weight of the evidence in convicting Mr. Zack. Accordingly, Mr. Zack's fourth assignment of error is overruled.
 B.
First Assignment of Error
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUA SPONTE [sic] DISQUALIFY THE LORAIN COUNTY PROSECUTORS' [sic] OFFICE AS A RESULT OF THE MULTIPLE ROLES OF ONE OF ITS ASSISTANT PROSECUTORS AS AN INVESTIGATING POLICE OFFICER, PROSECUTING ATTORNEY, AND WITNESS IN THE CASE.
 Mr. Zack contends that because Lieutenant Will worked part-time as an assistant prosecutor for the Lorain County Prosecutor's Office, was Mr. Zack's supervisor at the Elyria Police Department, and testified at trial, the court below should have sua sponte disqualified the entire Lorain County Prosecutor's Office. Mr. Zack argues that the multiple roles played by Lieutenant Will prejudiced the jury against him and denied him a fair trial. We disagree.
Mr. Zack relies heavily on State v. Vidu (July 23, 1998), Cuyahoga App. No. 71703/71704, unreported, 1998 Ohio App. LEXIS 3390, to support his position that the entire Lorain County Prosecutor's Office should have been disqualified from this case. In Vidu, the defendants sought to have the Cuyahoga County Prosecutor's Office disqualified because the defendants had previously consulted a law firm of which one of the prosecutors[6]
was listed as being "of counsel" at that time. Id. at *3. The trial court denied the defendants' motion for disqualification of the prosecutor's office. Id at *4. In affirming the trial court's decision, the appellate court stated that the vicarious disqualification of an entire prosecutor's office should be allowed only when actual prejudice is demonstrated. Id. at *10. The court then proceeded to list a number of factors relevant to making a determination of actual prejudice. Id.
The case at bar, however, is distinguishable from Vidu, in that Lieutenant Will was not an attorney for Mr. Zack; therefore, protecting client confidences by vicariously disqualifying the entire prosecutor's office is not relevant in this case. Rather, Mr. Zack was afforded the opportunity to relay potentially exculpatory information to both the police department and the prosecutor's office via Lieutenant Will. Lieutenant Will testified that to his knowledge, all of these leads were investigated.
Further, we find that the trial court did not err by permitting Lieutenant
Will to testify in light of the fact that he was also a part-time prosecutor for the Lorain County Prosecutor's Office. Generally, "[a] prosecuting attorney should avoid being a witness in a criminal prosecution[.]" State v. Coleman (1989), 45 Ohio St.3d 298, paragraph two of the syllabus. However, "where it is a complex proceeding and substitution of counsel is impractical, and where the attorney so testifying is not engaged in the active trial of the cause and it is the only testimony available, such testimony is admissible and not in violation of DR 5-102." Id. (finding that the trial court did not err by permitting a prosecuting attorney, who was not engaged as active counsel in the case, to identify handwritten motions authored by the defendant during the guilt phase of the trial).
In the present case, Lieutenant Will was not a prosecutor actively engaged in prosecuting this case. In fact, Lieutenant Will generally acted as prosecutor only in grand jury proceedings. Here, Lieutenant Will testified as a fact witness regarding policies and procedures of the police department that were in effect when the improper conduct occurred. Also, Lieutenant Will testified regarding a reprimand, which he had given to Mr. Zack. As Lieutenant Will was Mr. Zack's supervisor at that time and the only person, aside from Mr. Zack, capable of testifying to the details of the reprimand, we conclude that the trial court did not err in allowing Lieutenant Will to testify. As it was permissible for Lieutenant Will to testify in the present complex case and there was insufficient evidence to show that Lieutenant Will was Mr. Zack's attorney at any time, we conclude that the trial court did not err in failing to sua sponte disqualify the entire Lorain County Prosecutor's Office. Accordingly, Mr. Zack's first assignment of error is overruled.
 C.
Second Assignment of Error
 PROSECUTORIAL MISCONDUCT THROUGHOUT THE TRIAL, WITHOUT OBJECTION BY THE DEFENSE, CONSTITUTED PLAIN ERROR.
 Mr. Zack avers that the prosecutor committed misconduct by maligning Mr. Zack's character to the jury. Specifically, he contends that the prosecutor committed misconduct by making comments in his opening statement that Mr. Zack was capable enough and arrogant enough to dare to live outside the law. Mr. Zack also asserts that the prosecutor committed misconduct by repeatedly mentioning the civil settlements between the city and three of the women who accused Mr. Zack of improper conduct. He argues that the prosecutorial misconduct reduced the state's burden of proof and deprived Mr. Zack of a fair trial. We disagree.
As Mr. Zack's trial counsel did not object to the alleged instances of prosecutorial misconduct, we can only take notice of the error if it rises to the level of plain error. State v.Goodwin (1999), 84 Ohio St.3d 331, 339. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995), 108 Ohio App.3d 477, 482.
"The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Cornwell (1999),86 Ohio St.3d 560, 570. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id. at 570-71, quoting Smith v. Phillips (1982), 455 U.S. 209, 219,71 L.Ed.2d 78, 87. In deciding whether to reverse a conviction based upon improper statements, an appellate court must review the claim against the entire record and determine whether the alleged prosecutorial misconduct deprived the defendant of a fair trial.State v. Jenks (1991), 61 Ohio St.3d 259, 281.
In the present case, we are not convinced that the prosecutor's questions regarding the city's civil settlements with three of the victims or his remarks during opening and closing arguments, when considered individually or collectively, constituted prosecutorial misconduct and deprived Mr. Zack of a fair trial. In his opening statement, the prosecutor stated that "[t]he evidence will show [the jury] that [Mr. Zack] is so self-confident and so capable that he is one of these people that have realized that he can dare to live outside of the law[.]" He also made other similar comments during his opening statement. However, attorneys are generally afforded wide latitude in opening statements, so long as the matters referred to can be shown by competent or admissible evidence. Columbus v. Hamilton (1992),78 Ohio App.3d 653, 657, citing Maggio v. Cleveland (1949),151 Ohio St. 136, paragraph two of the syllabus. Moreover, "[n]ot every comment by counsel can be a basis for reversal." State v.Frazier (1995) 73 Ohio St.3d 323, 341. In the case at bar, we find that the prosecutor's comments did not rise to the level of plain error.
Similarly, we find that the prosecutor did not commit misconduct by questioning Ms. Henry, Ms. Wilson, and Ms. Bowen about their civil settlements with the city. It is well established that "[t]he record of a judgment in a civil action is not admissible in a criminal prosecution to establish the facts essential to a conviction of the offense charged." State v. Snyder (1952), 157 Ohio St. 15, paragraph one of the syllabus. However, evidence of a civil judgment may be admissible so long as it is not offered to establish the facts essential to a conviction, but rather, is offered for another purpose. See State v. Christman (May 28, 1999), Monroe App. No. 786, unreported, 1999 Ohio App. LEXIS 2486, at *42-43 (finding that the trial court did not err in permitting evidence and testimony regarding a probate court judgment from a presumption of death action because it was not offered as a substitute for proof of an essential element of murder, but rather, as an example of the defendant's many conflicting versions of his wife's disappearance).
In the present case, we find that the testimony regarding the civil settlements was not offered to establish the facts essential to a conviction, but rather, was offered for another purpose, to show bias. Evid.R. 607(A) states that "[t]he credibility of a witness may be attacked by any party[.]" A witness may be impeached by a showing of bias. State v. Mack (1995), 73 Ohio St.3d 502,517; see, also, Evid.R. 616(A). Further, "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616(A). Here, the prosecutor asked the witnesses about their civil settlements to show potential bias, and not to prove Mr. Zack's guilt. The prosecutor stated in his opening statement:
 Anita Bowen, Pamela Henry, Alisha Wilson sued the defendant within the time that they must, one year, and got a recovery. It is going to be strongly suggested to you that they only did this whole thing to get the money. You have promised that they'd enjoy equal protection of the law, that they have a right to sue. As I said before, I'm not telling you that you have to believe these people, but I think that you've admitted already that you cannot shut them out just for this reason.
 The state then briefly examined the witnesses about their settlements during trial. After carefully considering the entire record and limiting our holding to the particular circumstances of this case — which include a previous trial, civil settlements (rather than judgments), and the jury being informed of the witnesses' biases in the prosecutor's opening statement — we conclude that the prosecutor examined Ms. Henry, Ms. Wilson, and Ms. Bowen about their civil settlements with the city in order to reveal their potential biases regarding having a financial motivation to accuse Mr. Zack of improper conduct; hence, we cannot say that the prosecutor's remarks were improper, depriving Mr. Zack of a fair trial. Consequently, Mr. Zack's second assignment of error is overruled.
 D.
Third Assignment of Error
 APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BECAUSE HIS TRIAL COUNSEL'S FAILURE TO OBJECT TO MULTIPLE ERRORS.
 Mr. Zack argues that he was denied the effective assistance of trial counsel. He argues that his trial counsel was ineffective for the following reasons: (1) his trial counsel failed to move to disqualify the entire Lorain County Prosecutor's Office, (2) Mr. Zack's trial counsel failed to object to or request a limiting instruction on the testimony regarding the civil settlements, (3) his counsel failed to explore the testimony of Ms. Wilson which allegedly indicated that Mr. Zack may not have been her assailant, (4) his counsel failed to investigate certain physical evidence, and (5) Mr. Zack's trial counsel failed to object to Lieutenant Will's testimony regarding an ultimate issue of fact. We disagree.
A criminal defendant is guaranteed a right to the effective assistance of counsel by the United States Constitution. SeeMcMann v. Richardson (1970), 397 U.S. 759, 771, 25 L.Ed.2d 763,773, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693.
In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." See State v. DeNardis
(Dec. 29, 1993), Medina App. No. 2245-M, unreported, at 4.
First, Mr. Zack argues that he was denied the effective assistance of counsel when his trial counsel failed to move for the disqualification of the entire Lorain County Prosecutor's Office. As discussed above, the disqualification of the entire prosecutor's office would be inappropriate in this case; hence, we find that Mr. Zack's trial counsel's performance was not deficient in not moving for the aforementioned disqualification. Further, even if counsel's performance was deficient, it did not prejudice the defense.
Next, Mr. Zack argues that his trial counsel should have objected to or requested a limiting instruction regarding the testimony on the civil settlements. However, as previously noted, it was permissible for the prosecutor to expose the witnesses' potential biases regarding a financial motivation to accuse Mr. Zack. Thus, we hold that Mr. Zack's counsel's performance was not deficient and did not prejudice the defense.
Mr. Zack also avers that he was denied the effective assistance of counsel when his trial counsel failed to explore Ms. Wilson's testimony which indicated that Mr. Zack was not her assailant, failed to investigate certain physical evidence, and failed to object to Lieutenant Will's testimony regarding an ultimate issue of fact. Generally, we must give great deference to an attorney's trial strategies:
 "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted.)
 State v. Sallie (1998), 81 Ohio St.3d 673, 674, quoting State v. Carter (1995), 72 Ohio St.3d 545, 558. First, Mr. Zack contends that his trial counsel failed to explore testimony that may have established that Ms. Bateman had been assaulted by a police officer in the county jail rather than by Mr. Zack in the city jail. However, the record shows that Ms. Bateman clearly identified Mr. Zack as her assailant, regardless of whether there was confusion concerning the location of Mr. Zack's misconduct; therefore, we conclude that the defense counsel's performance was not deficient in choosing not to further explore this avenue of inquiry.
In addition, Mr. Zack alleges that he was denied the effective assistance of counsel when his trial counsel failed to investigate certain physical evidence. Specifically, he argues that his counsel failed to conduct any tests to determine the origin of blood droplets found on Ms. Wilson's panties and failed to investigate whether there were other bodily fluids or foreign hairs. However, we are not in a position to second-guess defense counsel's tactical decisions or what knowledge Mr. Zack may have provided to him concerning the incident at issue here. See, generally, State v. Cornwell (1999),86 Ohio St.3d 560, 569. Hence, we conclude that as this decision falls within the purview of trial tactics, Mr. Zack's trial counsel's performance was not deficient and did not prejudice the defense.
Further, Mr. Zack claims that his trial counsel failed to object to the state's question on an ultimate issue of fact. When asked by the prosecutor, Lieutenant Will testified that he searched for evidence that would exonerate Mr. Zack, but did not find any. It is well-settled that an attorney's "failure to make objections are `within the realm of trial tactics' and do not establish ineffective assistance of counsel." (Citations omitted.)State v. McCroskey (Apr. 2, 1997), Wayne App. No. 96CA0026, at 10; see, also, State v. Gumm (1995), 73 Ohio St.3d 413, 428. In the case at bar, we find that defense counsel's failure to object to Lieutenant Will's testimony was within the realm of trial tactics, as Mr. Zack's counsel may not have wanted to call additional attention to the testimony by objecting. Therefore, we conclude that as we must give great deference to the strategic decisions of Mr. Zack's trial counsel, trial counsel's performance was not deficient in the present case. Furthermore, we cannot conclude that Mr. Zack's trial counsel acted so poorly that he was no longer the counsel envisaged by theSixth Amendment to the United States Constitution. Accordingly, Mr. Zack's third assignment of error is overruled.
 III.
Mr. Zack's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT CARR, J., WHITMORE, J., CONCUR.
[1] These women include Jeanne Ulery, Pamela Henry, Alisha Wilson, Anita Bowen, Denise Bateman, Cicely Shelton, and Marla Bartolotta.
[2] The four counts of gross sexual imposition, of which Mr. Zack was convicted and sentenced, were in violation of R.C.2907.05(A)(1) and not R.C. 2907.05(A)(5).
[3] On the same day, the jury also found Mr. Zack guilty on five other counts in the indictment; however, in an order journalized on November 4, 1998, the trial court granted, in part, Mr. Zack's motion for acquittal, pursuant to Crim.R. 29, and dismissed the aforementioned five counts.
[4] R.C. 2907.12 was repealed on September 3, 1996.
[5] Approximately one month later, another tattoo line-up was held with a replica of Mr. Zack's tattoo. This time Ms. Bowen was unable to identify the exact tattoo; however, her description of the tattoo was consistent with Mr. Zack's tattoo.
[6] In Vidu, the defendants sought legal advice from the law firm of which the prosecutor was designated "of counsel" at that time. The prosecutor did not work on the defendants' case while she was at the law firm. The prosecutor herself was disqualified from the case.